538 F.2d 835
 UNITED STATES of America, Plaintiff-Appellee,
v.
Carl Dennis CUTTING and Barry Daniel Still, Defendants-Appellants.
 No. 71-2570.
 United States Court of Appeals,
Ninth Circuit.
 June 16, 1976.
 
 Burton C. Jacobson (argued), Beverly Hills, Cal., for defendants-appellants.
 W. Michael Mayock, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.
 OPINION
 Before CHAMBERS, KOELSCH, BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED and KENNEDY, Circuit Judges.
 TRASK, Circuit Judge:
 
 
 1
 Cutting and Still appeal their convictions, following jury verdicts of guilty, for mailing obscene matter and for mailing advertisements for obscene matter in violation of 18 U.S.C. § 1461. Cutting was convicted on 12 separate counts; Still was convicted on 11. Each was fined separately on each count, and each was given concurrent sentences of three years' probation on all counts of which he was convicted.
 
 I.
 
 2
 The material involved here concerns sample photographs with some description, two advertisements (counts 14 and 15) containing printed material but unaccompanied by photographs, and one reel of motion picture film. Cutting's convictions on five counts involving still photographs (counts 10, 11, 12 and 13) and count 20, the motion picture film, were based on material that can be described as "hardcore pornography." See Ginzberg v. United States, 383 U.S. 463, 499, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966) (Stewart, J., dissenting). The material variously depicts, in explicit detail, acts of sexual intercourse, including fellatio and cunnilingus. See Miller v. California, 413 U.S. 15, 25, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The remaining material consisted of still photographs of nude females in various frontal postures with legs spread apart and the camera focused upon the genitals. The written material accompanying the photographs made no pretense of representing that they were for any serious artistic, scientific, or literary purpose.
 
 
 3
 In instructing the jury, the district court told its members that the community to be applied was the national community as a whole. No objection was made to these instructions. Neither side introduced any expert testimony concerning the availability or acceptability of the materials alleged to be obscene at either the national or local levels. The photographs, films, and advertisements were before the jury. Expert testimony is not necessary to enable the jury to judge the obscenity of material which has been placed in evidence before them. See Hamling v. United States, 418 U.S. 102, 113, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); Paris Adult Theatre I v. Slaton, 413 U.S. 49, 56, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 120-22, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973). The jury examined the evidence and returned verdicts of guilty on all counts.
 
 
 4
 The acts underlying the indictment and trial took place before the 1973 and 1974 obscenity decisions of the Supreme Court of the United States. Appellants are therefore entitled to have their convictions measured against the standards of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 976, 16 L.Ed.2d 1 (1966), unless they would benefit by application of the Supreme Court's more recent decisions. Hamling v. United States, 418 U.S. 87, 102, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); United States v. Jacobs, 513 F.2d 564 (9th Cir. 1974). It is a general rule that a change in the law which has occurred after a relevant event in a case will be given effect while the case is on direct appeal. Hamling v. United States, supra, 418 U.S. at 102, 94 S.Ct. 2887, Linkletter v. Walker, 381 U.S. 618, 627, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). That rule applies here, and thus the judgments of conviction also must be substantively examined in the light of the principles laid down in the more recent cases. Hamling v. United States, supra, 418 U.S. at 102, 94 S.Ct. 2887.
 
 
 5
 Both the Memoirs test,[1] Memoirs v. Massachusetts, supra at 418, and the Miller test,[2] Miller v. California, supra, 413 U.S. at 24, 93 S.Ct. 2607, in the second portion of their tripartite tests, proscribe sexual material which is "patently offensive." In Miller, the Court took occasion to give examples of what it meant by "patently offensive":
 
 
 6
 "It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra :
 
 
 7
 "(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
 
 
 8
 "(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."[3] Miller v. California, supra at 25, 93 S.Ct. at 2615.
 
 
 9
 The Court in Hamling v. United States, supra, 418 U.S. at 115, 94 S.Ct. at 2906, said of the material there,
 
 
 10
 "It is plain from the Court of Appeals' description of the brochure involved here that it is a form of hard-core pornography well within the types of permissibly proscribed depictions described in Miller, and which we now hold § 1461 to cover." (Emphasis added.)
 
 
 11
 Thus, the Court in Hamling defined for purposes of section 1461 what constitutes hard-core pornography and found that it is made up in part at least by the examples listed in Miller.
 
 
 12
 To the argument made in Hamling that because the crime for which convictions had been obtained had not been enumerated in the statute at the time of their conduct, the convictions could not be sustained, the Court responded:
 
 
 13
 "But the enumeration of specific categories of material in Miller which might be found obscene did not purport to make criminal, for the purpose of 18 U.S.C. § 1461, conduct which had not previously been thought criminal." Hamling v. United States, supra 418 U.S., at 116, 94 S.Ct., at 2907.
 
 
 14
 The Hamling Court, supra at 114, 94 S.Ct., at 2906, to the same effect also said:
 
 
 15
 "As noted above, we indicated in United States v. 12 200-ft. Reels of Film, supra, 413 U.S. (123), at 130 n. 7, 93 S.Ct. (2665), at 2670 (37 L.Ed.2d 500 (1973)) that we were prepared to construe the generic terms in 18 U.S.C. § 1462 to be limited to the sort of 'patently offensive representations or descriptions of that specific "hard core" sexual conduct given as examples in Miller v. California.' We now so construe the companion provision in 18 U.S.C. § 1461, the substantive statute under which this prosecution was brought."
 
 II.
 
 16
 It is for this court to determine whether the jury could constitutionally find the materials obscene, in light of the tests enumerated by the Supreme Court as well as the examples of patently offensive materials listed in Miller v. California. Hamling v. United States, supra, 418 U.S. at 100, 94 S.Ct. 2887. What appeals to the prurient interest and is patently offensive are essentially questions of fact, Miller v. California, supra, 413 U.S. at 30, 93 S.Ct. 2607; the issue of obscenity must, in the first instance, be left to the trier of fact, be it a properly instructed jury or a trial judge.
 
 
 17
 "The general rule of application is that '(t)he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.' Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942)." Hamling v. United States, supra, 418 U.S. at 124, 94 S.Ct. at 2911.
 
 
 18
 But if it appears that the verdict is not supported by substantial evidence, a reviewing court has an obligation to set that verdict aside if the finding be one of obscenity. See Jacobellis v. Ohio, 378 U.S. 184, 190 & n. 6, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Brennan, J.). There is a limit beyond which a jury may not go in determining that certain materials are obscene. See Hamling v. United States, supra, 418 U.S. at 114, 94 S.Ct. 2887. A jury in an obscenity case may not act upon considerations of passion and prejudice and in disregard of the court's instructions any more than it could in other fields of law.
 
 
 19
 In Jenkins v. Georgia, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), a jury was instructed on obscenity under a Georgia statute in language substantially similar to the definition used in Memoirs. See note 1 supra. The material under question was the movie film, "Carnal Knowledge." There was substantial evidence of the quality of the film from an artistic standpoint, yet the jury found it to be obscene, and the Supreme Court of Georgia affirmed by a divided court. On appeal to the Supreme Court, probable jurisdiction was noted, 414 U.S. 1090, 94 S.Ct. 719, 38 L.Ed.2d 547 (1973), the conviction reviewed, and the judgment reversed. The Court pointed out that while questions of appeal to the " 'prurient interest' " or of "patent offensiveness" are " 'essentially questions of fact,' " juries do not have "unbriddled discretion" to make their own determination of what is " 'patently offensive.' "[4] 418 U.S. at 160, 94 S.Ct. 2887. The Court then pointed out that there was nothing in the film which under the Miller standards and illustrations could be said to meet those requirements.
 
 
 20
 "While the subject matter of the picture is, in a broader sense, sex, and there are scenes in which sexual conduct including 'ultimate sexual acts' is to be understood to be taking place, the camera does not focus on the bodies of the actors at such times. There is no exhibition whatever of the actors' genitals, lewd or otherwise, during these scenes. There are occasional scenes of nudity, but nudity alone is not enough to make material legally obscene under the Miller standards." Id. at 161, 94 S.Ct. at 2755.
 
 
 21
 The photographs in this proceeding do not fall within the description of the artistic material in Jenkins. Five counts involve explicit sex. There is no story line or theme to the film and no perceivable artistic value to the film or the four photographs. The other photographs are of female nudes so posed that a jury could quickly find that the sole purpose was to emphasize a lewd portrayal of genitals. Again, there was no pretense of artistic, scientific, or literary value connected with them. The jury was well within its province in finding them obscene and its verdict is supported by substantial evidence.
 
 III.[5]
 
 22
 Cutting also contends that he was prejudiced because the district court instructed the jury that in determining obscenity the jury was to apply the standard of the average person "in the national community," the then prevailing law under Memoirs. Miller v. California, supra, rejected the national standard and substituted a "contemporary community standards" test. 413 U.S. at 33, 93 S.Ct. 2607. In Hamling v. United States, supra, 418 U.S. at 102, 94 S.Ct. 2887, the Court held Miller retroactive with respect to cases on direct appeal when Miller was decided, as this case was. Hamling explained that in such a case as this "reversal is required only where there is a probability that the excision of the references to the 'nation as a whole' in the instruction dealing with community standards would have materially affected the deliberations of the jury." 418 U.S. at 108, 94 S.Ct. at 2903. After considering the record and the charge as a whole, we conclude that the jury deliberations in this case would not have been materially affected by excision of references to the national standard. See United States v. Ratner, 502 F.2d 1300, 1302 & n. 3 (5th Cir. 1974).
 
 
 23
 Except for the reference to "national" standards in the instructions, there was only one other mention of the matter during the trial of this case. In closing argument, defense counsel told the jurors they would be instructed that they must judge the material by a "national" standard. Counsel noted that the prosecution had offered no evidence as to what the "national" standard might be, and argued that it had therefore failed to carry its burden of proof. Defense counsel did not suggest that the "national" standard might be stricter than the local standard. The prosecutor ignored the subject entirely.
 
 
 24
 Since, as defense counsel said, there was no evidence as to the national standard (and no mention at all of a local standard), there is no basis for supposing that the jury would have assumed the national standard to be more strict than that which the jurors would apply as a result of their background as residents of the Central District of California. Except for defense counsel's statement, there would be no basis for supposing that the national standard might differ from the local standard.
 
 
 25
 The message conveyed by the instructions as a whole was that the applicable standard was a general one. The jurors were told that they were not to judge the material on the basis either of their personal impression, or of its impact on highly susceptible persons. They were reminded that people differ widely in their views as to the propriety of particular matter, and were admonished to consider the impact of the material on the "average person." These instructions presented the essentials of the "community standards" test and served its principal purposes, despite the references to the "national community as a whole." Hamling v. United States, supra, 418 U.S. at 107, 94 S.Ct. 2887.
 
 
 26
 It would not be appropriate to remand for an evidentiary hearing in an effort to determine whether the national standard was more strict than that prevailing in the Central District of California when the mailings occurred. Under Miller the question for the trier of fact is "whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . ." Miller v. California, supra, 413 U.S. at 24, 93 S.Ct. at 2615. This is a general standard, not a geographic one. Rejection of a uniform national standard does not necessitate "the substitution of some smaller geographical area into the same sort or formula." Hamling v. United States, supra, 418 U.S. at 104, 94 S.Ct. at 2901. The purpose of the "community standards" instruction is not to distinguish attitudes in one area from those in another, but rather to distinguish personal or aberrant views from the generalized view of the community at large. Instructions referring to the nation as a whole may serve this purpose. Hamling v. United States, supra, 418 U.S. at 107, 94 S.Ct. at 2887. See also United States v. Dachsteiner, 518 F.2d 20 (9th Cir. 1975).
 
 
 27
 The fact finder "is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination . . . ." Hamling v. United States, supra, 418 U.S. at 104, 94 S.Ct. at 2901. The test tends to result in application of "local" attitudes because of the limited area from which the jury is drawn, but this does not make the obscenity standard any more a geographic one than tests involving "the propensities of a 'reasonable' person in other areas of the law." Hamling v. United States, supra, 418 U.S. at 104-05, 94 S.Ct. at 2901.
 
 
 28
 Thus, when an instruction has been given in terms of a "national" standard, the essence of the question of prejudice is whether the instruction may have led the jury to apply some specialized test that might differ to the defendant's disadvantage from a generalized "average person, applying contemporary community standards" test. In this case, as we have said, we do not believe it did.
 
 
 29
 Hamling and Dachsteiner do not stand for the proposition that an erroneous instruction to apply national standards is harmless only if the local standard was the same as or stricter than the national standard. Prejudice does not depend on whether the standards differ in fact, but whether the jury thought they did. A remand to determine whether the national standard is more or less strict than the local standard would be an exercise in futility. To be relevant to the question of prejudice the hearing would have to determine whether the jurors thought the two standards differed, and, if so, whether they thought the national standard was the stricter. Obviously such a hearing would be inappropriate. The question of prejudice is to be resolved on what the record shows as to the probability that the reference to a national standard would have materially affected the deliberations of the jury. Hamling v. United States, supra, 418 U.S. at 108, 94 S.Ct. 2887.
 
 
 30
 In both Hamling and Dachsteiner the national standards instruction was held harmless because nothing in the record indicated the jury thought the national standard which it was to follow, was more strict than any other standard. This is true in the present case. In United States v. Henson, 513 F.2d 156 (9th Cir. 1975), on the other hand, a new trial was ordered because "the Government may have succeeded in its attempt to convince the jury" that the national standard was more strict than that in California. The court in Henson stated that the "prosecutorial attempt to separate and differentiate a 'national standard' from the defense testimony concerning the attitudes of Californians" distinguished Henson from Hamling and Dachsteiner. United States v. Henson, supra, 513 F.2d at 158.
 
 
 31
 It is true that there was some evidence that the two standards were the same in both Hamling and Dachsteiner. But the presence of this evidence did not determine the result in either case. It "only serve(d) to confirm" the conclusion of the court in Hamling that the references to a "national" standard did not require reversal. 418 U.S. at 110, 94 S.Ct. 2887. Similarly, in Dachsteiner, the emphasis was not upon the presence of some evidence of similarity in standards, but upon the fact that the "record contains no evidence that would have tended to persuade the jury that national standards of obscenity are more strict than those" in the district in which the case was tried. United States v. Dachsteiner, supra, 518 F.2d at 22.
 
 
 32
 Finally, it is argued that it would be a violation of due process to deny appellants an opportunity to try the "local standards" issue. The Hamling majority rejected this position. As our court noted in Dachsteiner:
 
 
 33
 "This argument is foreclosed by Hamling. There, the trial was also completed before Miller and 12 200-ft. Reels of Film were decided, 418 U.S. at 97, 94 S.Ct. 2887. The Supreme Court nevertheless found an absence of prejudicial error, relying only on the record before it. 418 U.S. at 107, 94 S.Ct. 2887. We do likewise here. Having examined the record, we find no indication that the erroneous instructions in this case 'materially affected the deliberations of the jury.' " United States v. Dachsteiner, supra, 518 F.2d at 22, quoting Hamling v. United States, supra, 418 U.S. at 108, 94 S.Ct. 2887.
 
 
 34
 Still's conviction is affirmed as to counts 1 to 5 inclusive, count 7, and as to counts 16 to 19 inclusive. Cutting's conviction is affirmed as to counts 1, 2, 6, 8 and 9; also as to counts 10 to 13 inclusive; and as to counts 16 and 20. Convictions of both Cutting and Still on count 15 are reversed, and because no convictions on this count could possibly be maintained we direct that as to this count the indictment be dismissed.
 
 
 35
 HUFSTEDLER, Circuit Judge, dissenting, with whom Circuit Judges KOELSCH, ELY, and CHOY concur; Circuit Judge BROWNING concurs in Part I of Judge HUFSTEDLER'S dissenting opinion.
 
 
 36
 I dissent from the majority's affirmance of the convictions of both Cutting and Still.
 
 
 37
 * Other than count 15, which the majority agrees should be dismissed, all of the counts against Still and all of the counts against Cutting, except counts 10, 11, 12, 13, and 20, involve still photographs of solitary male or female nude models. Although I discern no redeeming social value in these photographs, I cannot say that this material primarily appeals to prurient interests, nor that it is so patently offensive as to offend contemporary community standards, however much it may offend my own standards or that of my brothers.
 
 
 38
 The majority opinion attempts to justify its conclusion that these solitary nude photographs are obscene by referring to the reformulation of the "patently offensive" concept stated in Miller v. California (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, particularly, that portion of Miller explaining that states could proscribe "(b) Patently offensive representations . . . of . . . lewd exhibition of the genitals." Although I have difficulty reconciling that language with Miller's basic "sexual conduct" limitation on the regulation of pornography (413 U.S. at 24, 93 S.Ct. 2607) and I am unable to define what representations are "patently offensive," or what kind of exhibitions are "lewd," within the meaning of Miller, I do know that the quoted Miller standard is a substantial departure from that of Roth-Memoirs as applied to photographs of solitary nude models. Before Miller, the Supreme Court had repeatedly given constitutional protection to such photographs, no matter how unattractive were the models' physical endowments and no matter how tastelessly the models were posed. (E. g., Central Magazine Sales, Ltd. v. United States (1967) 389 U.S. 50, 88 S.Ct. 235, 19 L.Ed.2d 49, reversing United States v. 392 Copies of Magazine Entitled "Exclusive" (4th Cir. 1967) 373 F.2d 633; Potomac News Co. v. United States (1967) 389 U.S. 47, 88 S.Ct. 233, 19 L.Ed.2d 46, reversing United States v. 56 Cartons Containing 19,500 Copies of Magazine Entitled "Hellenic Sun" (4th Cir. 1967) 373 F.2d 635; Redrup v. New York (1967) 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515; United States v. Arno (9th Cir. 1972) 463 F.2d 731; Pinkus v. Pitchess (9th Cir. 1970) 429 F.2d 416, affirmed sub nom. California v. Pinkus (1970) 400 U.S. 922, 91 S.Ct. 185, 27 L.Ed.2d 183).
 
 
 39
 Miller cannot be applied retroactively to deny constitutional protection to materials that were protected under Roth-Memoirs. The Court in Hamling v. United States (1974) 418 U.S. 102, 94 S.Ct. 2887, 41 L.Ed.2d 590, explicitly held that Miller could be retroactively applied only to those appellants who would benefit from Miller.
 
 
 40
 The Government attempted to push these photographs over the Roth-Memoirs' line by offering evidence to evoke concepts of pandering, exploitation of juveniles, or obtrusive advertising. Most of the recipients testified that they had ordered the materials in question or similar materials in the past. There was considerable evidence that appellants made efforts within the limits imposed by a mail order business to insure that the materials reached only adults. The means of purveying the photographs were not so unusually blatant as to bring the case into the fold of Ginzburg v. United States (1966) 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31.
 
 
 41
 Still's conviction should be reversed because it rested solely on materials that are constitutionally protected; Cutting's conviction upon counts based on the same materials should also be reversed.
 
 II
 
 42
 This record does not justify the conclusion that the error in giving the national standard instruction was not prejudicial. Cutting could not and did not try this standards issue. The refusal of the majority to remand the case for an evidentiary hearing to ascertain the existence of prejudice deprives him from ever trying the issue and thus deprives him of due process of law.
 
 
 43
 Pursuant to then prevailing law, the district court instructed the jury that, in determining obscenity as a matter of fact, it was to apply the standard of the average person "in the national community at the time of the . . . mailing." As in Miller v. California (1973) 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, this instruction stated "a 'national standard' of First Amendment protection enumerated by a plurality of this Court (and), was correctly regarded at the time of trial as limiting state (and federal) prosecution under controlling case law." (413 U.S. at 30-31, 93 S.Ct. at 2618.) Miller rejected the national standard and substituted the "contemporary community standards" test. (Id. at 33, 93 S.Ct. 2607.)
 
 
 44
 Before Hamling, we could reasonably have assumed that Miller would require reversal of their convictions because we could have anticipated that Miller would be fully retroactive and that the constitutional error would compel reversal without regard to any showing of prejudice, unless, perhaps, the Government could demonstrate in a particular case that the error was harmless beyond a reasonable doubt. (E. g., Burgett v. Texas (1969) 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319; Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.) In Hamling, however, the Court held that Miller is retroactive only in respect of those cases on direct appeal when Miller was decided and only as to those appellants who would benefit from Miller (418 U.S. at 102, 94 S.Ct. 2887).[1] Hamling also departed from the traditional rules governing the effect of constitutional error when it applied to Miller a new rule that was drawn from cases considering nonconstitutional errors: "(R) eversal is required only where there is a probability that the excision of the reference to 'the country as a whole' in the instruction dealing with community standards would have materially affected the deliberations of the jury. Cf. Namet v. United States, 373 U.S. 179, 190-191, 83 S.Ct. 1151, 1156-1157, 10 L.Ed.2d 278 (1963); Lopez v. United States, 373 U.S. 427, 436, 83 S.Ct. 1381, 1386, 10 L.Ed.2d 462 (1963)."[2] (418 U.S. at 108, 94 S.Ct. at 2903.)
 
 
 45
 I agree that reversal of Cutting's conviction on counts 10, 11, 12, 13 and 20 is not compelled because I cannot say on the present record that there is a probability that excision of the national standard reference "would have materially affected the deliberations of the jury." (Id.) But neither can I say that the probability does not exist. The record is silent. A remand is both necessary and appropriate to permit the record to be developed; thereafter and not before, can we properly decide whether reversal is or is not required by Hamling and Miller. Indeed, until we know whether the national standard was less liberal than a non-national standard, we cannot ascertain whether Miller applies at all because its retrospectivity depends upon its benefiting an appellant.[3]
 
 
 46
 This record is not like that in Hamling, or United States v. Dachsteiner (9th Cir. 1975) 518 F.2d 20. In those cases, there was evidence that the "local"[4] and national standards were similar. The record before us provides no help at all in trying to decide whether Miller would have benefited this appellant or whether the jury was probably affected by the error, if Miller were applied.
 
 
 47
 The materials in this case are sexually oriented, and they would surely offend some communities. But that observation provides no basis upon which to assume that (1) the jurors disobeyed the instruction and applied a hypothetical average person in some "community" other than the nation, or (2) the jurors obeyed the instruction, but concluded that whatever the national standard was, it was no different from the standard of their own vicinage, or, if there were any difference, the local standard was stricter. To the contrary, in the absence of any evidence in the record about levels of tolerance, the appropriate assumption is that "local" attitudes and national attitudes, in fact, differ. The Supreme Court in Miller expressly emphasized the existence and importance of such differences in rejecting a national standard. (413 U.S. at 30, 32-33, 93 S.Ct. 2607.) With an inference, if not a presumption, that community standards differ from the national standard and that local communities differ from one another, we cannot conclude from a silent record that the standard applied by the jury in this case was the same or similar to the standard that they were instructed to apply. Our analysis properly begins with the premise that the standards are different. No justification exists for deciding by logic or by common experience that the difference is that a non-national standard is always stricter than the former national standard. Without such justification, the affirmance deprives Cutting of any notice and any opportunity to be heard on the standards issue. Rudimentary concepts of due process forbid that result. (Cf. Bouie v. City of Columbia (1964) 378 U.S. 347, 352, 84 S.Ct. 1697, 12 L.Ed.2d 894, United States v. Jacobs (9th Cir. 1975) 513 F.2d 564, 566.)
 
 
 48
 The Government argues that a remand for an evidentiary hearing is contrary to Paris Adult Theatres v. Slaton (1973) 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446, which held that the Government need not offer any evidence on community standards in trying an obscenity case. The Government's argument misses the point. A remand would be in no respect a retrial of this obscenity case. The issues to which the evidentiary hearing would be directed are (1) whether Cutting would have benefited from retrospective application of Miller, and (2) whether the instruction upon national standards probably affected the jury.
 
 
 49
 I would reverse Still's conviction with instructions to dismiss the indictment. I would reverse Cutting's conviction with instructions to dismiss all counts of the indictment, except counts 10, 11, 12, 13 and 20, and as to those counts, I would remand for an evidentiary hearing in accordance with the views herein expressed.
 
 
 50
 BROWNING, Circuit Judge, concurring in part, dissenting in part:
 
 
 51
 I concur in Part III of the majority opinion, affirming Cutting's conviction on counts 10, 11, 12, 13, and 20. I dissent from the remainder of the majority opinion for the reasons stated in Part I of Judge Hufstedler's dissenting opinion. I would reverse Cutting's conviction on all other counts, and reverse Still's conviction on all counts.
 
 
 
 [1]
 Under the older Roth-Memoirs test, an obscenity conviction is valid only if:
 "(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." Memoirs v. Massachusetts, supra, 383 U.S. at 418, 86 S.Ct. at 977.
 
 
 [2]
 The test enumerated in Miller v. California, 413 U.S. at 24, 93 S.Ct. at 2615, is as follows:
 "(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest, Kois v. Wisconsin, supra, 408 U.S. (229), at 230, 92 S.Ct. (2245), at 2246 (33 L.Ed.2d 312), quoting Roth v. United States, supra, 354 U.S. (476), at 489, 77 S.Ct. (1304), at 1311 (1 L.Ed.2d 1498); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."
 
 
 [3]
 In describing what the states "could" proscribe, it appears that the Court was clearly at the same time stating what the federal statutes did proscribe
 That this is a correct reading of the meaning of the Court, we observe that in United States v. 12 200-ft. Reels of Film, 413 U.S. 123, 130 n. 7, 93 S.Ct. 2665, 2670, 37 L.Ed.2d 500, the Court said:
 "We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where ' "a serious doubt of constitutionality is raised" ' and ' " a construction of the statute is fairly possible by which the question may be avoided." ' United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971) (opinion of White, J.), quoting from Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). If and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462, see United States v. Orito, supra, 413 U.S. (139), at 140 n. 1, 93 S.Ct. (2674), at 2676 n. 1 (37 L.Ed.2d 513), we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in Miller v. California, supra, 413 U.S., at 25, 93 S.Ct., at 2615." (Emphasis added.)
 
 
 [4]
 The opposite situation when the material is patently obscene and the jury makes a finding of non-obscenity has not been passed upon by the Supreme Court nor do we decide that question here
 
 
 [5]
 The portion of the opinion in this section was prepared by Judge Browning for an earlier draft and is used verbatim with his permission, having met the approval of a majority of the court
 
 
 [1]
 The Court did not relate its retroactivity holding to any of the criteria developed in Linkletter v. Walker (1965) 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, and its progeny, by which retroactivity had been theretofore decided
 The most recent decision collecting the cases and discussing the retroactivity concept is United States v. Peltier (1975) 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374. The criteria there discussed are irrelevant in the obscenity context.
 
 
 [2]
 In Namet, the Court said: "No constitutional issues of any kind are presented." (373 U.S. at 185, 83 S.Ct. at 1154.) In Lopez, the reference is to the rejection of claimed error in the district court's refusal sua sponte to charge the jury on entrapment
 
 
 [3]
 Since we are as yet uncertain if Miller applies to this case, we should not decide that the jury was not "materially affected" by the instruction (Cf. Bowen v. United States (1975) 422 U.S. 916, 921, 95 S.Ct. 2569, 45 L.Ed.2d 641.)
 
 
 [4]
 I use the term "local" pejoratively because the Supreme Court has never defined the community to which Miller refers when it stated the test in terms of "contemporary community standards." (See Hamling v. United States, supra, 418 U.S. at 413, 94 S.Ct. 2887 (Brennan, J., dissenting).)
 The Court has said that "community" can be defined in geographical terms (Miller v. California, supra, 413 U.S. at 33-34, 93 S.Ct. 2607), and, perhaps, by Congress in national terms ("What Miller makes clear is that state juries need not be instructed to apply 'national standards'." Jenkins v. Georgia (1974) 418 U.S. 153, 157, 94 S.Ct. 2750, 2753, 41 L.Ed.2d 642), but no geographical referent is constitutionally compelled. (Id. at 157, 94 S.Ct. 2750.) "Community" can refer to the vicinage from which the jury is drawn (Hamling v. United States, supra, 418 U.S. at 105, 94 S.Ct. 2887), but "community" need not be confined to the vicinage. (Id. at 106, 94 S.Ct. 2887.)