UNITED STATES of America,
Plaintiff-Appellee,

v.

OBSCENE MAGAZINES, BOOK AND
ADVERTISING MATERIALS, et
al., Defendants,

Eugene Schoenfeld, M.D.,
Claimant-Appellant.

No. 79–3300.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 9, 1981.

Decided Aug. 10, 1981.

Goodwin, J., filed a specially concurring opinion.

* The Honorable Earl B. Gilliam, United States District Judge for the Southern District of Cali-

Howard Gest, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Fred Okrand, Los Angeles, Cal., for claimant-appellant.

Before GOODWIN and ANDERSON, Circuit Judges, and GILLIAM,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Dr. Eugene Schoenfeld has challenged the district court's determination that six magazines and one book sought to be imported by him were obscene and thus subject to forfeiture as provided by § 305 of the Tariff Act, 19 U.S.C. § 1305.

The relevant portion of § 1305 provides that:

"All persons are prohibited from importing into the United States from any foreign country . . . any obscene book,

fornia, sitting by designation.

pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or other article which is obscene or immoral . . . ." [1]

19 U.S.C. § 1305. It is well settled that the test for determining the obscenity of materials proscribed by 19 U.S.C. § 1305 is governed by *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and its progeny. *United States v. 12 200-ft. Reels of Film*, 413 U.S. 123, 130 n.7, 93 S.Ct. 2665, 2670 n.7, 37 L.Ed.2d 500 (1973); *United States v. 2,200 Paper Back Books*, 565 F.2d 566, 569–70 (9th Cir. 1977). Before a publication can be adjudged obscene, the trier of fact must find that (a) " 'the average person, applying contemporary community standards,' would find that the work, taken as a whole, appeals to the prurient interest;" (b) "the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law;" and (c) "the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." [2] *Miller, supra*, 413 U.S. at 24, 93 S.Ct. at 2615. The coalescence of all three elements of the test is required to support a determination that a work is obscene. Thus, even prurient, patently offensive depictions or descriptions of sexual conduct are not obscene if they have serious literary, artistic, political, or scientific value. *Id.* at 26, 93 S.Ct. at 2616.

At the forfeiture proceeding below, the government introduced the six publications into evidence and rested. Dr. Schoenfeld then testified that a substantial portion of his study and practice of medicine had been devoted to the subjects of drug use and human sexuality, and that the materials could be used in connection with that area of his medical practice and professional writing. While he conceded at oral argument that "in and of themselves," the publications are obscene under the *Miller* test, he contended that § 1305 was not intended to prohibit the importation of such materials when destined for use by a doctor in furtherance of his medical practice and professional writing. He further contended that unless the statute was interpreted as he suggested, then it unconstitutionally deprives him of the right to practice medicine.

In support of his argument, Dr. Schoenfeld cites *United States v. 31 Photographs*, 156 F.Supp. 350 (S.D.N.Y.1957). The case permitted a medical researcher to import colorably obscene material despite the unqualified language of § 1305 because the material was said to be of use in research. Dr. Schoenfeld contends that *31 Photographs* creates "a conditional privilege in favor of scientists and scholars, to import material which . . . [is] obscene" despite § 1305, if the material furthers their research or work. *Id.* at 358–59.

■ We note that *31 Photographs* did not expressly create a medical research exception to § 1305, it mentioned the existence of the privilege as a possible alternative reason for its decision. But even if we were to hold that such a privilege does in fact exist in this circuit, we would be compelled to hold on the record presented here, that Dr. Schoenfeld has not proven facts that would support his claim of privilege.

The record indicates that the district judge found Dr. Schoenfeld's legal theory

---

1. The statute also vests discretionary authority in the Secretary of the Treasury to admit "the so-called classics or books of recognized and established literary or scientific merit," for noncommercial purposes. Schoenfeld apparently failed to pursue this avenue for discretionary administrative relief.

2. While the second element of the *Miller* test refers to patently offensive depictions or descriptions of sexual conduct *specifically defined by applicable state law*, it is clear that proscriptions against obscenity contained in federal regulatory statutes, such as 19 U.S.C. § 1305, will be limited to "patently offensive representations or descriptions of that specific 'hardcore' sexual conduct given as examples in *Miller v. California*," *United States v. 12 200-ft. Reels of Film, supra*, 413 U.S. at 130 n.7, 93 S.Ct. at 2670 n.7. *See also United States v. Various Articles of Obscene Merchandise*, 600 F.2d 394, 405 (2d Cir. 1979); *United States v. Cutting*, 538 F.2d 835, 838–839 n.3 (9th Cir. 1976), *cert. denied*, 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977).

"interesting," but continuously expressed his concern over Schoenfeld's failure to develop the requisite factual foundation to support it. Having chosen to argue that the publications were somehow insulated from the operation of § 1305's ban on the basis of his particularized and subjective utilization of them, it was incumbent upon him to demonstrate that the materials had that capacity, i. e., that they could be so used. The district judge ultimately found that Dr. Schoenfeld had failed to sustain his burden. The district court's factual findings are reviewed under the clearly erroneous standard of Fed.R.Civ.P. 52(a). After a thorough review of all the evidence, we are not left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

Schoenfeld argues that the trial judge had no reason or authority to disregard or discredit his testimony. This attack rests upon a misapprehension of the court's ruling. While much of Dr. Schoenfeld's testimony may leave persons of reasonable intelligence shaking their heads in disbelief, the fatal flaw in Schoenfeld's proof finds its source not in what he said, but rather, in what he failed to say.

In this regard, Schoenfeld claims that he was put in a "Catch 22" position in that he was asked to testify about materials that, by reason of their seizure, he had never seen. Not only is this assertion unfounded, it borders on deliberate misrepresentation. By stipulation between the parties and approved by the district court, Schoenfeld was granted an additional month to file an answer to the complaint so that he could further examine the material in preparation of his answer. By order of the court, the materials were transferred to the district in which Schoenfeld resides. At trial, Schoenfeld testified that he had reviewed the materials. Moreover, the testimony was not restricted to the specific seized materials. Schoenfeld testified that he had similar publications in his library and the trial judge invited his testimony regarding the use of them in connection with his medical

practice. In short, the district court afforded Dr. Schoenfeld every opportunity to prove his case and, in fact, intervened at several points during the trial in an effort to assist both Schoenfeld and his counsel in developing the appropriate factual basis. This was not accomplished. Accordingly, the judgment of the district court is

AFFIRMED.

GOODWIN, Circuit Judge, specially concurring.

The district court found, in a more or less contested context, that the challenged books fit the *Miller* definition of obscenity and therefore that they were not eligible to enter this country under 19 U.S.C. § 1305. We affirm and I concur.

The record made in the trial court fell short of presenting to the district judge an undeniable claim of a medical exception to § 1305. That question was presented 24 years ago to Judge Palmieri at a time when American "obscenity" law was beginning to take shape under the uncertain guidance of *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). *See United States v. 31 Photographs, etc.*, 156 F.Supp. 350 (S.D.N.Y.1957).

It will be recalled that in *31 Photographs* the court was faced with the problem of a statute whose plain meaning excluded from importation into this country pictorial representations of erotic and reproductive behavior that the University of Indiana claimed it needed for scientific purposes. One can embroider at length upon the relationships between Dr. Kinsey's research and various grades of pornography; but some relationship between art and science in the study of human behavior, including sexual behavior, was beyond serious argument. Judge Palmieri found that the institute that was to receive the photographs did not have a prurient interest in them. Judge Palmieri held that in the hands of the institute, at least, the pictures were not obscene; then, to avoid resting entirely upon the potentially treacherous ground that obscenity could be in the eye of the beholder, the

**384**

judge chose an alternate, or fall back, position that the particular pictures in question were privileged in the consignee institute because the statute did not cover material imported for medical purposes.

Whether or not Congress intended to allow a "medical exception" to its statute making pornography nonimportable, the District Court for the Southern District of New York did discover such an exception, and the Republic survived. I agree with Judge Palmieri that the legal definitions of obscenity should not be used to preclude the admission of research material. I am willing to accept the existence of a medical exception to 19 U.S.C. § 1305 because to refuse to accept that exception would involve us in endless definitional problems.

Nothing could be more obscure than the line between the prurient versus the scientific interests of various individuals who believe that there may be some value in studying unconventional depictions of human behavior for various scientific or pseudo scientific reasons. These judicial speculations would nearly always end in some sort of subjective analysis of the challenged material, and the court would, one way or another, be spending its time censoring some self-proclaimed scientist's reading matter.

Because I believe with John Milton that anyone cultivated enough to be a good censor would not have the job, and that anyone willing to be a censor is categorically unfit for the job, I happily accept the medical exception that the doctor in this case claims to be his right.

In this case, however, the doctor did not make the kind of record that would justify this court in holding that the findings of fact by the trier were clearly erroneous. Accordingly, I concur.