**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James E. SMITH, Defendant-Appellant.**

**No. 85–1216.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1986.

Decided July 29, 1986.

---

844

R. Michael Burke, Honolulu, Hawaii, for plaintiff-appellee.

H. Dean Steward, Asst. Federal Public Defender, Honolulu, Hawaii, for defendant-appellant.

## OPINION

Before CHOY, ALARCON, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Appellant James E. Smith (Smith) appeals from a judgment entered on a jury verdict finding him guilty of six counts of violating the federal child pornography statutes, 18 U.S.C. §§ 2251, 2252 (1984 Supp.),[1] and one count of being a felon in possession of a firearm in violation of 18 U.S.C.App. § 1202(a)(1982). We affirm.

## FACTS

In 1984, Smith took photographs of three teenage girls in various stages of nudity, for the purpose, he asserts, of starting a catalog of lingerie and beauty products for teenage girls. Smith claims the photographs were not to be shown to anyone but himself and the girls themselves, and the government introduced no evidence at trial to contradict this assertion.

Smith mailed the undeveloped, unprocessed film to a photo company in Maryland through a standard "film mailer." The company services only private (as opposed to commercial) photographers. After developing the film, the company contacted U.S. postal inspectors. The postal inspectors examined the photographs, consulted a pediatrician, interviewed Smith and two of the children in the photographs, and then filed an affidavit for a warrant to search Smith's residence. A magistrate issued the warrant, and the ensuing search uncovered, among other things, a .357

1. These sections are part of the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95–225, 92 Stat. 7, as amended by the Child Protection Act of 1984, Pub. L. No. 98–292, 98 Stat. 204.

Magnum revolver in a suitcase in a rear hall closet.

Smith was charged with three counts of inducing or coercing a minor to engage in sexually explicit conduct (specifically sadistic and masochistic abuse) for the purpose of producing visual depictions of such conduct (18 U.S.C. § 2251(a) (1984 Supp.)), three counts of mailing such visual depictions (18 U.S.C. § 2252(a) (1984 Supp.)), and one count of being a felon in possession of a firearm (18 U.S.C.App. § 1202(a) (1982)). A jury convicted Smith on all counts. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

### I. The Child Pornography Counts

#### A. *"Distribution" Requirement*

Smith contends that there was insufficient evidence to allow a reasonable jury to conclude that he intended to distribute the pictures to others, rather than merely use them himself. The government does not dispute this, but argues that proof of intent to distribute is unnecessary under sections 2251 and 2252.[2] Therefore, although Smith frames his argument in terms of sufficiency of evidence, the real issue turns on interpretation of the statutes, which is a question of law reviewable *de novo. See United States v. Wilson,* 720 F.2d 608, 609 n. 2 (9th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984).

The language of sections 2251 and 2252 is clear and unambiguous. The plain language of the sections simply makes illegal the inducement of children into sexual conduct for the purpose of creating visual depictions of that conduct (section 2251)

and the mailing of such visual depictions (section 2252). Neither section requires that the defendant's ultimate goal be distribution of the visual depiction.

Earlier versions of sections 2251 and 2252 both required that the prohibited visual depictions be "for the purpose of sale or distribution for sale," *see* 18 U.S.C. §§ 2251, 2252 (1982) (amended), but the 1984 amendments eliminated that language, as Smith concedes. Smith nevertheless argues that the 1984 amendments were intended only to close a potential loophole for distributors who exchanged, lent, or gave away material, rather than selling it. It was not intended, Smith argues, to eliminate the distinction between distributors and mere producers for personal use. He urges us to consider a number of passages in the legislative history that strongly suggest the amendment was designed to allow prosecution of *noncommercial* distributors.

■ Although we are not absolutely forbidden to look at the legislative history in construing a statute that is plain on its face, *see Tulalip Tribes of Washington v. F.E.R.C.,* 732 F.2d 1451, 1454 (9th Cir. 1984), we must take such a step cautiously. *Rivera v. Becerra,* 714 F.2d 887, 893 (9th Cir.1983), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984). As we have noted on more than one occasion,

> [I]f evidence drawn from the face of the statute militates strongly for one interpretation, but not quite so strongly that the legislative history may safely be ignored, the legislative history should be considered, but considered cautiously. Under these circumstances a second in-

2. The statutes provide in relevant part:
§ 2251
(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided in subsection (c), if such person knows or has reason to know that such visual depiction will be ... mailed, or if such visual depiction has actually been ... mailed.

§ 2252
(a) Any person who—
(1) knowingly ... mails any visual depiction, if—
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
(B) such visual depiction is of such conduct...

· · · ·

shall be punished as provided in subsection (b) of this section.

terpretation should be accepted on the basis of the legislative history only if the evidence is very strong, which will usually require explicit language. *Heppner v. Alyeksa Pipeline Service Co.*, 665 F.2d 868, 873 (9th Cir.1981); *Tulalip Tribes*, 732 F.2d at 1454 (quoting *Heppner*).

■ The legislative history in the present case does not outweigh the plain language of the statute. Although the committee reports and the floor debate strongly suggest that Congress deleted the language "for the purpose of sale or distribution for sale" to eliminate the existing loophole for the nonprofit distributor, *see, e.g.*, H. Rep. No. 536, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad. News 492, the available materials do not explicitly demonstrate that Congess intended to exempt nondistributing producers and users from the scope of the amended statute. The legislators simply seem not to have considered such producers and users at all.

■ This possible lack of consideration falls short of overcoming the plain language of the statute. In the absence of a clear indication that Congress did not mean what it said, we must abide by the terms of the statute as written, which cover Smith's behavior. Smith's assertion that the government must prove that he intended to distribute the visual depictions therefore fails.

## B. "Visual Depiction"

Smith also argues that unprocessed, undeveloped film does not constitute a "visual depiction" within the terms of the statute. He argues that substantial, complicated, and costly developing must be done before any visually perceptible image is created, and that as a result his mailing of the unprocessed film did not violate the child pornography statute.

■ As a preliminary matter, we note that even if Smith's argument is correct, the lack of an accomplished "visual depiction" would affect only Smith's convictions under section 2252(a) (actual transportation of visual depictions). Section 2251(a) does not require the *actual* production of a visual depiction, merely the enticement of minors *"for the purpose of producing"* a visual depiction of sexually explicit conduct. Whether the film involved here had actually reached the point of "visual depiction" or not, Smith's use of the girls was clearly "for the purpose of producing" such visual depictions. That Smith took the pictures and mailed the undeveloped film for processing and printing is sufficient proof of that purpose to allow a jury to find a violation of section 2251(a).

Turning to the merits of Smith's argument, we note that "visual depiction" is not defined in the statute.[3] Smith relies on common sense and dictionary definitions for his assertion that unprocessed film is not covered. He correctly notes that color film must undergo an elaborate developing process before any image can be perceived by the human eye.

■ Nevertheless, we conclude that the exclusion of unprocessed film from the statute's coverage would impede the child pornography laws by protecting a necessary intermediate step in the sexual exploitation of children. The interpretation urged by Smith would allow unrestricted interstate commerce in child pornography

---

**3.** The former definition of "visual depiction" ("any film, photograph, negative, slide, book, magazine, or other visual or print medium") was deleted and not replaced by the 1984 amendments. The government cites legislative history to the effect that the deletion was merely intended to eliminate written (i.e., nonvisual) material from the reach of the statute. Prohibition of such written material raised first amendment questions, *see New York v. Ferber*, 458 U.S. 747, 764–65, 102 S.Ct. 3348, 3358–59, 73 L.Ed.2d 1113 (1982), and was not considered necessary for the protection of the children Congress identified as the victims of the child pornography industry.

In view of our conclusion below based on the broader, affirmative intent of Congress, however, we need not rely on this narrower, "negative" legislative history to characterize undeveloped film as a "visual depiction" within section 2255.

so long as the pornography was still in the form of undeveloped film. Such a loophole is inconsistent with congressional intent; the undeveloped state of the film does not eliminate the harm to the child victims in the film's production or the incentive to produce created by the film's trafficking. We therefore hold that undeveloped film constitutes a "visual depiction" as that term is used in 18 U.S.C. § 2252(a).[4]

## II. The Search Warrant

■ At trial, Smith moved to suppress evidence seized at his apartment pursuant to the search warrant on the ground that the postal inspector's affidavit was insufficient to support the issuance of the warrant. The district court denied his motion. We need only ensure "that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Moreno*, 758 F.2d 425, 427 (9th Cir.1985). The magistrate's decision cannot be reversed unless it is clearly erroneous. *Id.*

■ Smith argues that the affidavit was an inadequate basis for the warrant, relying primarily on the "anonymous" and "conclusory" allegation that the photos depict "explicit sexual conduct" and the fact that the issuing magistrate never saw the photos.[5] We are troubled by the fact that the government did not present and the magistrate did not see the photos in question before the warrant issued. Obviously, presentation of the photos with the affidavit would have been the ideal course, and the record contains no hint of why this was not done. Nevertheless, we do not find this omission fatal to the warrant in light of the affidavit taken as a whole.

■ We turn first to the alleged "anonymity" of the affidavit's assertion that the photos depicted "explicit sexual conduct." Although the affidavit is literally susceptible of the construction Smith urges (that the photo company alone asserted that the photos depicted sexually explicit

---

4. Although Smith did not specifically raise the issue of due process, we feel that our conclusion here compels us to address the issue.

As a matter of due process, "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939), *quoted in Hynes v. Mayor of Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). A statute must fail for vagueness if persons "of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926), *quoted in Hynes*, 425 U.S. at 620, 96 S.Ct. at 1760. We must therefore consider whether a statute forbidding the mailing of "visual depictions" of sexually explicit conduct by minors gave Smith fair notice that the mailing of undeveloped film of such activities was thereby prohibited.

We conclude that fair notice was given. The statute clearly forbids the condition precedent of the undeveloped film, the actual inducement of minors into the sexually explicit conduct to be photographed. *See* 18 U.S.C. § 2251. The statute likewise prohibits the mailing of negatives and prints, the logical consequence of mailing undeveloped film to a processor. *See* 18 U.S.C. § 2252. In light of this, we conclude that no person "of common intelligence" would need to "guess" that the intermediate step, the actual mailing of the undeveloped film, was also

prohibited. No one fairly reading the statute could reasonably conclude that the statute permitted Smith's acts.

5. Smith also urges that the First Amendment dictates special review of the affidavit because allegedly obscene materials were involved. The government contends that the affidavit rested squarely on the child pornography statute, which does not require obscenity. Even if allegedly obscene materials were involved, however, Smith's argument fails. The Supreme Court has recently held that "a warrant authorizing seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally," *United States v. P.J. Video, Inc.*, ___ U.S. ___, 106 S.Ct. 1610, 1615, 89 L.Ed.2d 871 (1986), i.e., "whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 1615–16 (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

Although the warrant in this case was issued before the decision in *P.J. Video*, we elect to give the Court's holding in *P.J. Video* retroactive effect. We find no salutory effect in limiting a finding that police conduct does *not* violate the constitution. *See United States v. Estrada*, 733 F.2d 683, 685 (9th Cir.) (giving retroactive effect to *Gates*), *cert. denied*, ___ U.S. ___, 105 S.Ct. 168, 194, 83 L.Ed. 2d 103 (1984).

conduct), the common sense reading of the affidavit is that the affiant himself, the postal inspector, represents that the photos are of three juvenile girls engaged in "explicit sexual conduct." The magistrate reasonably and properly relied on this common sense reading of the affidavit. *See United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

■■■■ As to the affidavit's "conclusory" statement that the photographs depicted "sexually explicit conduct," we do not

find the character of the allegation fatal to the warrant. Although more specific descriptions of the photographs would have been desirable, we note that the affidavit specifically refers to violation of section 2251, directing the magistrate to the child pornography statute and its definitions. *See* 18 U.S.C. § 2255 (1984 Supp.).[6] These definitions are quite specific, and the magistrate reasonably considered the statement of an experienced postal inspector that the photos depicted "sexually explicit conduct" within the statute.[7]

6. 18 U.S.C. § 2255 (1984 Supp.) is the definitions section of the child pornography statute. It provides in relevant part:

> For the purposes of this chapter, the term—
>
> .    .    .    .
>
> (2) "sexually explicit conduct" means actual or simulated—
> > (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> > (B) bestiality;
> > (C) masturbation;
> > (D) sadistic or masochistic abuse; or .
> > (E) lascivious exhibition of the genitals or pubic area of any person[.]

7. We also note that the difference in constitutional requirements between child protection and obscenity statutes also results in different requirements for an affidavit supporting a warrant under the respective statutes. To pass constitutional muster as unprotected obscenity, a work must appeal to the prurient interest in sex when taken as a whole, must portray sexual conduct in a patently offensive way, and must not, taken as a whole, have serious literary, artistic, political, or scientific value. *See Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). Although the existence of these characteristics is ultimately a question of fact, submitted to a jury, *see United States v. Cutting,* 538 F.2d 835, 839 (9th Cir. 1976), *cert. denied,* 429 U.S. 1052, 97 S.Ct. 766, 50 L.Ed.2d 769 (1977), a determination of this "fact" involves complicated knowledge and information far beyond that which is evident from the face of a photograph alone. An affidavit that merely alleges that certain photographs are "obscene," therefore, makes a complicated and subjective conclusion unsuitable for an independent judicial evaluation and therefore inadequate for the issuance of a warrant. *See New York v. P.J. Video, Inc.,* — U.S. ——, 106 S.Ct. 1610, 1614, 89 L.Ed.2d 871 (1986) (citing *Lee Art Theatre, Inc. v. Virginia,* 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968)).

In contrast, the constitutional requirements for a child pornography statute are much simpler and more susceptible to credible assertion in an affidavit. For example, "the category of 'sexual conduct' proscribed [by a statute] must ... be suitably limited and described." *Ferber,* 458 U.S. at 764, 102 S.Ct. at 3358. The conduct addressed by section 2255 is clearly as specific as (indeed, it is almost identical to) the language of the statute approved in *Ferber. See Ferber,* 458 U.S. at 765, 102 S.Ct. at 3358 (quoting N.Y. Penal Law § 263.00(3) (McKinney 1980), including "sado-masochistic abuse"). An assertion that certain pictures depict "sexually explicit conduct" prohibited by sections 2251 and 2252 does not require of the affiant extensive knowledge of the prurient interest of the average person, of what portrayals of sexual conduct are patently offensive, or of literary, artistic, political, or scientific criteria for "serious merit." The affiant need only be able to identify the specific, clearly defined acts listed in section 2255.

This identification is certainly "conclusory" to a certain extent, but it is a conclusion based on observation and not, as in the case of "obscenity," one based on evaluation. The statement that the photographs depict sexually explicit conduct is similar to many other factual conclusions routinely accepted by courts in applications for warrants. For example, the affidavit in the present case also contains the conclusion of a pediatrician that the subjects of the photographs are under the age of eighteen and the conclusion of a postal inspector (not the affiant) that persons who mail photographs like the photographs taken by Smith are often collectors and are likely to have more such materials in their homes. Both of these conclusions are statements of fact based on earlier observations and experience with similar subjects, and Smith does not challenge either as providing an insufficient basis for issuing the warrant. Such experience-based factual conclusions are a normal, necessary, and perfectly acceptable part of an affidavit, *see, e.g., United States v. Hendershot,* 614 F.2d 648, 650 n. 1, 654 (9th Cir.1980) (holding that an affidavit need not detail the experience of the affiant to justify acceptance of the affiant's conclusion "that bank robbers fre-

Moreover, the affidavit does not stand on the evaluation of the photographs alone. It also reveals a statement by a pediatrician that the girls were under eighteen, Smith's admission that he took the pictures, Smith's declaration that he "would just have to take more" if the pictures were not returned to him, and statements by two of the girls that they had posed for Smith's pictures and that Smith kept a "whip-like" device at his residence.

Taken as a whole, therefore, we conclude that the affidavit provided a substantial basis for a finding of probable cause, and the magistrate's issuance of the warrant was not clearly erroneous.

### III. Firearms Count

On the basis of the evidence presented at trial, the jury found Smith guilty of one count of being a felon in possession of a firearm. Smith now asserts that there was insufficient evidence to allow a reasonable jury to conclude beyond a reasonable doubt that Smith had constructive possession of the gun, *see United States v. Universal Trade & Industries, Inc.*, 695 F.2d 1151, 1152 (9th Cir.1983) (setting out this standard of review), and that his conviction on this count should therefore be reversed.[8] The government does not dispute that the gun was not registered to Smith, did not bear his fingerprints, and was found inside multiple containers in a closet. Smith concedes the gun was found in his apartment. The sole disputed factual issue is whether Smith knew of the presence of the gun in the closet at the time of the search (that is, *after* his former girlfriend, the gun's owner, moved out). Both parties rightly view this knowledge as crucial to whether Smith had sufficient "dominion and control" over the weapon to allow a jury to find constructive possession. *See, e.g., United States v. Batimana*, 623 F.2d 1366, 1369 (9th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980).

■ Smith's lack of ownership of the gun and the absence of his fingerprints on it tend to support his claim that he did not know of the gun's presence in his apartment. In addition, as Smith points out, the government presented no direct evidence at trial that Smith knew of the gun's presence at the time of the search.[9] Nevertheless, the undisputed presence of the gun in Smith's apartment (an apartment over which he unquestionably had exclusive dominion and control) and his admission that he knew of the gun's earlier presence there suffice to allow a reasonable jury to conclude beyond a reasonable doubt that Smith was in constructive possession of the gun. *Compare Batimana*, 623 F.2d at 1369 (holding that defendants present in

quently keep clothing, weapons, loot, disguises and other items of evidence in their automobiles."), and do not have the evaluative aspects that raise constitutional problems.

8. Smith does not dispute that he is a felon or that the gun had travelled in interstate commerce, the other two elements of the offense.

9. The only evidence the government points to as specifically proving Smith's knowledge came in the direct examination of Smith by his own attorney, and that testimony is at best ambiguous. The relevant testimony is as follows, in its entirety:

Q (By Mr. Steward [defense counsel]) Mr. Smith, you have heard testimony about a gun in this case.
A Right.
Q Whose gun is that?
A Well, it was my girl—my last girl friend's gun.
Q What is her name?
A Umeko Ryan.
Q What was it doing in your apartment?
A We lived together four years, and she possessed the gun then.
Q Why didn't she have it now?
A She got married after leaving me to a man that she was working with—both of us were recent divorcees living together, and we were both rebounds, and she rebounded again.
* * *
Q (By Mr. Steward) Why doesn't she have the gun today?
A She got married, and moved out.
Q Did you ever handle that gun?
A No.
Q Did you know you weren't supposed to have a gun?
A No.
Q Now, do you have a felony on your record?
A Yes.
Q When was that?
A 1975.

hotel room where heroin was delivered were not in constructive possession of the drug because they did not assert dominion and control over the heroin).

## IV. Joinder and Severance

### A. Joinder Under Rule 8(a)

■ Smith argues that the firearms count was improperly joined for trial with the child pornography counts and urges us to reverse his convictions and remand the case for a new trial or trials. Misjoinder of charges is an issue of law, reviewable *de novo* by this court. *See United States v. Friedman*, 445 F.2d 1076, 1082 (9th Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971).

The firearms charge and the child pornography charges are clearly misjoined in the present case. Two offenses may be joined only "if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). The firearms and child pornography counts are clearly dissimilar in kind and, as the government discussed at length in its closing argument, the presence of the gun was in no way related to or part of a common plan involving the photographs of the girls.

■ Nevertheless, Smith's misjoinder claim must fail because he did not object to joinder at trial. A motion for severance under Rule 14 does not preserve a Rule 8 misjoinder objection for appeal. *See United States v. Scaife*, 749 F.2d 338, 344 (6th Cir.1984); *United States v. Barbosa*, 666 F.2d 704, 707 (1st Cir.1981); *United States v. Hedman*, 630 F.2d 1184, 1200 (7th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *see also United States v. Bailey*, 675 F.2d 1292, 1294 (D.C.Cir.) (holding that a Rule 14 motion for severance preserves a Rule 8 objection to joinder only if it actually raises and argues the basis for the misjoinder finding), *cert. denied*, 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982); *cf.* Fed.R.

Crim.P. 12(f). In the present case, Smith moved for severance of the pornography and firearms counts both before and during trial without stating whether he was relying on Rule 8 (Joinder) or Rule 14 (Severance). Smith's counsel's arguments to the court make clear, however, that the motion for severance was based on the prejudice to Smith of exposing the jury, already faced with the emotionally charged issue of child pornography, to the additional taint of Smith's prior felony and his illegal possession of the gun. *See, e.g., United States v. Lewis*, 787 F.2d 1318, 1322–23 (9th Cir.1986). We have canvassed the record presented to us on appeal and can find no argument below addressing the *legal* question of whether Rule 8 permitted the joinder of the disparate charges. We therefore conclude that the Rule 8 issue was not raised below and is therefore waived. *See Bailey*, 675 F.2d at 1294.

### B. Severance Under Rule 14

■ Smith also claims reversible error in the trial court's denial of his motion to sever the firearms and child pornography counts. Even if joinder is permissible under Rule 8, a party who feels prejudiced by joinder may move to sever pursuant to Fed.R.Crim.P. 14, which provides in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

This court reviews the trial court's decision not to sever for abuse of discretion, and there is no abuse of that discretion unless the defendant proves that the joint trial of the charges was "manifestly prejudicial." *Lewis*, 787 F.2d at 1321; *United States v. Kenny*, 645 F.2d 1323, 1345 (9th Cir.), *cert. denied*, 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425, 454 U.S. 828, 102 S.Ct. 121, 70 L.Ed.2d 104 (1981).

 

Smith asserts specific prejudice mainly from the jury's exposure to the taint of the gun, a .357 Magnum, and Smith's illegal possession of it.[10] Smith argues that evidence of the gun in the same apartment where Smith was allegedly producing the pornography inflamed an already emotionally charged trial and invited the jury to infer that Smith would have used the gun to threaten or kill the children if they had refused to allow him to take their pictures.

We conclude, however, that the district court's refusal to sever was not manifestly prejudicial. Both the prosecution and the court took great pains to avoid emphasizing the presence of the gun or linking it to the photography. The only government questioning regarding the gun merely located the gun in the apartment. The court carefully cautioned the jury about separating the questions of guilt of the various charges. Finally, the prosecution's own closing argument cautioned the jury not to make the very inference that Smith claims was prejudicial, that the gun was somehow connected to the photography. Although we have expressed concern about the effectiveness of cautionary instructions in this context, *see Lewis*, 787 F.2d at 1322–23, the circumstances of the present case nevertheless require us to conclude that Smith suffered no manifest prejudice. The presence of the gun would have had the greatest impact, as Smith argues, on the jury's decision on whether Smith had employed, used, persuaded, induced, enticed, or coerced the girls into posing. Smith, however, admitted employing the girls to pose for the pictures, so this element of the crime was not in issue and thus was not subject to prejudice. The main defense offered by Smith at trial and argued by his attorney to the jury was that the photographs depicted merely "horseplay," and not "sexually explicit conduct." We find it difficult to see how the presence of the gun in Smith's apartment could have influenced in any way the jury's decision that the photographs depicted "sexually explicit conduct." We therefore find no manifest prejudice from the failure to sever.

AFFIRMED.

10. Smith also asserts prejudice from the revelation to the jury of the prior felony conviction that the firearms charge enabled. As the government points out (and as Smith apparently concedes in his reply brief), however, this prior conviction would have been admissible to impeach Smith anyway. Smith had stated that he would testify and the felony involved dishonesty and was less than ten years old. *See* Fed.R.Evid. 609.