**Rafael RODRIGUEZ, et al.,
Plaintiffs, Appellants,**

v.

**CLARK COLOR LABORATORIES,
Defendant, Appellee.**

No. 90–1345.

United States Court of Appeals,
First Circuit.

Heard Sept. 7, 1990.

Decided Dec. 14, 1990.

**348**

Benicio Sanchez Rivera, San Juan, P.R., for plaintiffs, appellants.

Eli B. Arroyo with whom Ivan M. Fernandez, Hato Rey, P.R., was on brief, for defendant, appellee.

Before BREYER, Chief Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.

VAN GRAAFEILAND, Senior Circuit Judge.

Rafael Rodriguez and Evelyn Romero–Miranda appeal from a summary judgment of the United States District Court for the District of Puerto Rico (Pieras, J.) dismissing their suit for damages against Clark

* Of the Second Circuit, sitting by designation.

Color Laboratories. 732 F.Supp. 279. For reasons that follow we affirm.

On April 1, 1987 Robert Northrop, a United States Postal Inspector, received a telephone call from Louis Blancato, the security officer at defendant Clark Color Laboratories' photo processing plant in Beltsville, Maryland. Blancato informed Northrop that Clark had received and processed some photographs that depicted oral genital sexual type contact between an adult male and an infant male. Northrop examined the photographs and determined that the adult male was "performing fellatio and other such acts upon the infant child." Because Northrop believed the photos were pornographic, he took them into his custody along with the film order, which disclosed that the undeveloped film had been mailed from Lares, Puerto Rico by plaintiff Evelyn Romero–Miranda.

Northrop sent the documents to F.J. Baraga, a United States Postal Inspector in San Juan, who ascertained that the male adult in the photographs was Romero–Miranda's common-law husband, Rafael Rodriguez, and the infant was their son. The photographs and evidence of mailing were turned over to Assistant United States Attorney Jorge Arroyo, who in turn presented them to a federal grand jury. On March 28, 1987 the grand jury indicted both Rodriguez and Romero–Miranda for violating 18 U.S.C. §§ 2251(a) and (b) (sexual exploitation of children) and 2252(a)(1) (mailing a photograph of a person engaged in sexually explicit conduct). However, following a jury trial in San Juan, both defendants were acquitted. Thereafter, they sued Clark in the United States District Court for the District of Puerto Rico alleging that defendant's act of turning the photographs over to the postal authorities constituted libel, slander, defamation and negligence. Finding no merit in any of these claims, the district court granted Clark's motion for summary judgment.

The Supreme Court's landmark opinion in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), gave special impetus to legislative efforts to halt

the spread of child pornography. The Court held that such efforts did not run afoul of the First Amendment and that obscenity need not be proven, and stated that, in order to eliminate child pornography, the distribution network for objectionable photographs of children must be closed. *Id.* at 756–65, 102 S.Ct. at 3354–59. The effect of the *Ferber* opinion is clearly evidenced in the several amendments of the Protection of Children against Sexual Exploitation Act of 1977, Pub.L. No. 95–225, 1978 U.S.Code Cong. & Admin.News (92 Stat.) 7. *See* H.R.Rep. No. 536, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 492, 492–93; H.R. Rep. No. 910, 99th Cong., 2d Sess. 6, *reprinted in* 1986 U.S.Code Cong. & Admin. News 5952, 5955.

Section 2252(a)(1) as amended makes it unlawful for any person to knowingly mail in interstate commerce any visual depiction of a minor engaging in sexually explicit conduct. Section 2252(a)(2) makes it unlawful for any person to knowingly reproduce any such visual depiction for interstate distribution through the mails. "Visual depiction", as used in these sections, includes "undeveloped film". 18 U.S.C. § 2256(5). The legislative history indicates that the term "visual depiction" was defined in this manner "to facilitate prosecutions involving such media, at the recommendation of the United States Postal Inspection Service." 1986 U.S.Code Cong. & Admin.News at 5957.

The language of sections 2251 and 2252 has been held to be clear and unambiguous. *United States v. Andersson*, 803 F.2d 903, 906 (7th Cir.1986), *cert. denied*, 479 U.S. 1069, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987); *United States v. Smith*, 795 F.2d 841, 845 (9th Cir.1986), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1964, 95 L.Ed.2d 535 (1987). It has been well established by now that a person who mails negatives of child pornographic photographs to a commercial processor for development violates section 2252(a)(1). *See United States v. Thomas*, 893 F.2d 1066, 1070 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990); *United States v. Smith, supra*, 795 F.2d at 845–46; *United States v. Lang-*

*ford*, 688 F.2d 1088, 1096–97 (7th Cir.1982), *cert. denied*, 461 U.S. 959, 103 S.Ct. 2433, 77 L.Ed.2d 1319 (1983).

It would seem from a literal reading of section 2252(a)(2) that, if a photo processor, after observing the pornographic nature of the visual depiction, develops the negatives and mails the developed pictures to the sender, it would be in violation of that section. Indeed, under a literal reading of section 2252(a)(1), the processor would appear to be in violation of that section if it simply returns the undeveloped negatives, knowing what they depicted.

Apparently, the only case in which a court considered the problem thus confronting commercial photo processors was *United States v. Petrov*, 747 F.2d 824 (2d Cir.1984), *cert. denied*, 471 U.S. 1025, 105 S.Ct. 2037, 85 L.Ed.2d 318 (1985). That case involved alleged violations by a commercial photo processor of 18 U.S.C. § 1461 (mailing of obscenity) and 18 U.S.C. § 2251 (sexual exploitation of children). The court majority held that the language of section 1461 was broad enough to include photo processors within its scope, rejecting the dissent's contention that Congress did not intend that statute to apply to photo processors. The majority agreed that section 2251 did not cover photo processors, because it was "narrowly drawn to reach only those people who deal with children directly." *Id.* at 827. In a dictum discussion, the court majority stated that Petrov's activity "arguably" might fall under the language of section 2252 as that section was written in the 1977 Act, but the court inferred from the legislative history that Congress intended to exclude photo processors from that statute. *Id.* at 828. The majority completed its dictum observations, however, by stating that the 1984 amendments to section 2252, covering the knowing reproduction of visual depictions, might have been intended to bring photo processors within the scope of the statute. *Id.* at 828–29. Since our decision in the instant case does not require us to answer the question left unanswered by the *Petrov* majority, we will not do so. It is enough that we recognize a strong possibility that

the *Petrov* majority's observation was correct.

It is little wonder then that commercial photo processors, when confronted with the problem of what to do with pornographic "visual depictions", appear to have developed a practice of looking to law enforcement or postal officials for guidance. *See, e.g., United States v. Thomas, supra,* 893 F.2d at 1067; *United States v. Wolf,* 890 F.2d 241, 242 (10th Cir.1989); *United States v. Smith, supra,* 795 F.2d at 844. The district court correctly held that Clark Color Laboratories should not be held liable for following that practice in a case like the instant one, where the processed photographs lent themselves to a plausible conclusion that they depicted an infant engaging in sexually explicit conduct.

*Affirmed.*