UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

 

No. 96-1709

 UNITED STATES OF AMERICA,

 Appellee,

 v.

 CHRISTOPHER B. CARROLL,

 Defendant, Appellant.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Joseph A. DiClerico, Jr., U.S. District Judge] 

 

 Before

 Selya, Circuit Judge, 

 Aldrich, Senior Circuit Judge, 

 and Boudin, Circuit Judge. 

 

 M. Kristin Spath, Assistant Federal Defender, Federal 
Defender Office, on brief for appellant.
 Paul M. Gagnon, United States Attorney, and Jean B. Weld, 
Assistant United States Attorney, on brief for appellee.

 

 February 3, 1997

 

 SELYA, Circuit Judge. In this case a jury convicted SELYA, Circuit Judge. 

defendant-appellant Christopher B. Carroll of violating a federal

child pornography statute. Following the imposition of sentence,

Carroll appeals. The key question involves an elusive comma.

Having found the comma, we affirm.

 I. I. 

 Background Background 

 In the summer of 1995, the appellant separated from his

wife, Tammy. While sorting out her husband's personal effects,

Tammy discovered two rolls of undeveloped film. The film

contained 46 photographs of the appellant's adolescent niece,

Brittany.1 Many of these photographs depicted Brittany in

various states of undress, wearing her mother's lingerie, holding

sex toys and inserting them in body cavities, and posing

suggestively. After an investigation spearheaded by the Federal

Bureau of Investigation (FBI), the government concluded that the

appellant took these photographs on January 8, 1995 (when

Brittany was 13 years of age). Carroll's indictment, trial,

conviction, and sentencing followed.

 II. II. 

 Analysis Analysis 

 In this venue, the appellant advances two assignments

of error. We discuss them in sequence.

  

 1Brittany is a pseudonym which we employ in compliance with
the confidentiality requirements of 18 U.S.C. 3509(d)(1)
(1994).

 2

 A. A. 

 Sufficiency of the Evidence Sufficiency of the Evidence 

 The statute of conviction provides in relevant part:

 Any person who [1] employs, uses,
 persuades, induces, entices, or coerces any
 minor to engage in, or [2] who has a minor
 assist any other person to engage in, or [3]
 who transports any minor in interstate or
 foreign commerce, or in any Territory or
 Possession of the United States, with the
 intent that such minor engage in[,] any
 sexually explicit conduct for the purpose of
 producing any visual depiction of such
 conduct shall be punished as provided [by
 law] if such person knows or has reason to
 know that such visual depiction will be
 transported in interstate or foreign commerce
 or mailed, or if such visual depiction has
 actually been transported in interstate or
 foreign commerce or mailed.

18 U.S.C. 2251(a)(1994) (arabic numerals supplied; propriety of

including bracketed comma to be discussed infra). In this 

instance the government accused Carroll, under the first

statutory category, of using or persuading Brittany to

participate in making sexually explicit depictions. The judge

instructed the jurors that, in order to convict, they must find

that the government proved three elements beyond a reasonable

doubt: (1) that the defendant "knowingly used or persuaded [the

minor] to engage in sexually explicit conduct for the purpose of

producing a visual depiction of that conduct"; (2) that "at the

time such conduct was engaged in, the defendant knew that [the

minor] was under the age of eighteen years"; and (3) that the

defendant "knew or had reason to know that such visual depiction

would be transported in interstate commerce." The appellant

 3

claims that the government did not prove the last of these

elements and that the court therefore erred in denying his motion

for judgment of acquittal.

 A trial court must enter a judgment of acquittal in a

criminal case if "the evidence is insufficient to sustain a

conviction." Fed. R. Crim. P. 29(a). We afford de novo review

to Rule 29 determinations, see United States v. Olbres, 61 F.3d 

967, 970 (1st Cir.), cert. denied, 116 S. Ct. 522 (1995), 

employing a familiar mantra: "If the evidence presented, taken

in the light most flattering to the prosecution, together with

all reasonable inferences favorable to it, permits a rational

jury to find each essential element of the crime charged beyond a

reasonable doubt, then the evidence is legally sufficient." Id. 

In conducting this tamisage, we consider all the evidence, direct

and circumstantial, and resolve all evidentiary conflicts in

favor of the verdict. See United States v. Amparo, 961 F.2d 288, 

290 (1st Cir.), cert. denied, 506 U.S. 878 (1992). Under this 

formula, the evidence before us suffices to sustain a finding

that the appellant intended to transport the pornographic

depictions in interstate commerce (and therefore knew that they

would be so transported).

 The government sought to satisfy the interstate

commerce element here in two ways, both featuring Brittany's

testimony. One approach involved the intended use of the

sexually explicit photographs. According to Brittany, the

appellant discussed with her his plan to scan the images into a

 4

friend's computer and distribute them on the Internet. This

testimony, if believed, proved the government's point.

Transmission of photographs by means of the Internet is

tantamount to moving photographs across state lines and thus

constitutes transportation in interstate commerce. See United 

States v. Thomas, 74 F.3d 701, 706-07 (6th Cir.), cert. denied, 

117 S. Ct. 74 (1996); United States v. Maxwell, 42 M.J. 568, 580 

(U.S.A.F.C.A. 1995). And here, since the photographs were taken

in New Hampshire but the computer that Carroll allegedly planned

to use was located in Massachusetts, interstate transportation

perforce would have occurred when the appellant carried the

fruits of his labor across the New Hampshire border into

Massachusetts.

 The government's second approach involved the

anticipated processing of the photographs. Brittany testified

without contradiction that Carroll told her he was going to take

the film to Massachusetts to be developed. If believed, this

testimony, in and of itself, would forge the requisite interstate

link. See 18 U.S.C. 10 (1994) (defining "interstate commerce" 

for purposes of Title 18); cf. Rodriguez v. Clark Color Labs., 

921 F.2d 347, 349 (1st Cir. 1990) (indicating in dictum that

knowing mailing of undeveloped negatives across state lines

satisfies interstate commerce element under child pornography

statutes).

 The appellant mounts a ferocious attack on the

credibility of Brittany's testimony. He notes, among other

 5

things, that she did not mention the Internet connection when she

first testified; that, on cross-examination, she originally said

that her grandmother had told her that Carroll wanted to place

her pictures on the Internet; and that she changed her story on

redirect examination, asserting for the first time that the

appellant had mentioned the Internet to her. He also assails

Brittany's account of his supposed plan for developing the

prints, stressing that she did not make this revelation until

shortly before the trial.

 For purposes of Rule 29, the government's proof passes

muster. The appellant's criticisms of Brittany's testimony go to

the weight of the evidence, not to its sufficiency, and therefore

were properly left to the jury. Some degree of inconsistency is

not surprising when a minor testifies about traumatic events

instigated by a close relative. Here, moreover, the

inconsistencies came in response to a series of leading questions

by defense counsel; on redirect, after refreshing her

recollection by perusing reports of interviews she had given to

an FBI agent, Brittany's memory cleared. In these circumstances,

a fair-minded jury could easily believe that her refreshed

recollection represented an accurate account of the relevant

events and that Carroll took the photographs with the intention

either to have them developed out of state, or to put them on the

Internet, or both.

 This conclusion is reinforced by other evidence that

supports Brittany's testimony on redirect examination. The

 6

record suggests, for example, that the appellant and his friend

(Doug Allen) had in the past attempted to scan pornographic

images into Allen's computer, thus permitting the jury to infer

that the two men knew how to circulate photographs on the

Internet and might want to put Brittany's likenesses to similar

use. Allen also testified that he and Carroll intended to form

an on-line dating service utilizing both pictures and personal

messages. Carroll apparently knew about a similar service being

offered in New Hampshire which depicted topless females with

black bars across their faces to conceal their identities. Given

this background, Brittany's testimony that Carroll told her that

he would put her picture on the Internet with a little black

strip across her eyes could have suggested to a thoughtful jury

that he intended to use the sexually explicit photographs to

promote his embryonic dating service.

 We have said enough on this score. In the final

analysis, the appellant's argument boils down to a plaint that

the jury misjudged Brittany's veracity. Credibility

determinations are, of course, squarely within the jury's domain.

See United States v. Romero, 32 F.3d 641, 646 (1st Cir. 1994); 

United States v. O'Brien, 14 F.3d 703, 706-07 (1st Cir. 1994). 

Eyewitness testimony is rarely seamless, and appellate courts

ordinarily should decline invitations to second-guess a jury's

considered decision about whether to credit particular testimony

despite the fact that it contains inconsistencies. This case

falls comfortably within the sweep of that generality. Resolving

 7

evidentiary conflicts and drawing reasonable inferences in the

government's favor, as the Rule 29 standard requires, see Olbres, 

61 F.3d at 970, the evidence is adequate to support a finding

that the appellant intended to transport the sexually explicit

photographs in interstate commerce. No more is exigible.

 B. B. 

 The Judge's Charge The Judge's Charge 

 The appellant's next point is grammatically intriguing

but legally impuissant. He posits that a trial judge has an

obligation to instruct the jury on every element of the offense

of conviction, that flouting this obligation constitutes

reversible error, and that such a lapse occurred here. In the

circumstances of this case, we agree with the first two-thirds of

the appellant's triangular hypothesis, see, e.g., United States 

v. DiRico, 78 F.3d 732, 735 (1st Cir. 1996), but we take issue 

with his conclusion that the charge omitted necessary

information.

 In enumerating the elements of the offense, the judge

refused to include a requirement that the government prove the

defendant knowingly persuaded the minor to engage in sexually

explicit conduct "with the intent that such minor engage in" such

conduct for the purpose of producing a visual depiction thereof.

It is to this omission that the appellant assigns error,

asserting that section 2251(a) must be read so that the phrase

quoted above modifies all three types of actions criminalized

 8

under the statute, namely, (1) employing, using, persuading,

inducing, enticing, or coercing a minor to engage in sexually

explicit conduct (the "use" category, under which Carroll was

charged); (2) having a minor assist another person to engage in

such conduct (the "assistance" category); and (3) transporting a

minor in interstate or foreign commerce (the "transportation"

category). This assertion depends almost entirely on the absence

of punctuation immediately following the quoted phrase; it is

only the putative lack of a comma that makes arguable the theory

that the phrase modifies the trailing phrase "any sexually

explicit conduct" and, thus, applies to all three categories of

proscribed behavior.2

 For reasons that will appear, the district court bought

into the proposition that no comma lurked in the critical place

  

 2A graphic iteration of a portion of the statute may help to
illustrate the point:

 Any person [1] who employs, uses,
 persuades, induces, entices, or coerces any
 minor to engage in, or [2] who has a minor
 assist any other person to engage in, or [3]
 who transports any minor in interstate or
 foreign commerce, or in any Territory or
 Possession of the United States, with the 
 intent that such minor engage in[,] any any 
 sexually explicit conduct for the purpose of sexually explicit conduct for the purpose of
 producing any visual depiction of such producing any visual depiction of such
 conduct. . . . conduct. . . .

18 U.S.C. 2251(a) (arabic numerals, underscoring, and bold
facing supplied). The issue is whether the underscored phrase
should be read as accompanying the passage in bold face, or
whether it should be considered a part of what we have termed the
third category of proscribed conduct (and, thus, does not modify
the passage in bold face). This depends, in part, on whether the
text contains the bracketed comma.

 9

and acted upon this perception; it assumed that Congress

inadvertently omitted the comma, read the statute as if it were

there, and confined the quoted phrase to the third category of

proscribed conduct (transportation).3 We review the district

court's solution to this enigma de novo. See Strickland v. 

Commissioner, Me. Dep't of Human Servs., 96 F.3d 542, 545 (1st 

Cir. 1996) (holding that questions of statutory construction

receive nondeferential review).

 Insofar as we can tell, the judge's underlying premise

 that the statute did not contain a comma in the critical place

 arose because both parties conceded as much below (as they do

on appeal); other federal courts had accepted the premise as

true, see, e.g., United States v. Thomas, 893 F.2d 1066, 1068 

(9th Cir.), cert. denied, 498 U.S. 826 (1990); and the statute as 

printed in updates of the United States Code Annotated, e.g., 

West Supp. 1996, and as rendered in at least one computerized

legal research data base, omitted the comma. But appearances

often are deceiving. See Aesop, The Wolf in Sheep's Clothing 

(circa 550 B.C.). In point of fact, the authoritative version of

the statute does contain the elusive comma. Congress added the

language in question by enacting Pub. L. 99-628, 3, 100 Stat.

3510 (1986). The text of the amendment, as disclosed in the

  

 3The court impliedly premised this interpretive rationale on
its power to "disregard the punctuation [contained in a statute],
or repunctuate, if need be, [in order] to render the true meaning
of the statute." United States Nat'l Bank v. Independent Ins. 
Agents of Am., Inc., 508 U.S. 439, 462 (1993) (citations 
omitted).

 10

Statutes at Large, shows a comma after "engage in." Conflicts

between the text of a statute as it appears in the Statutes at

Large, on one hand, and in usually reliable but unofficial

sources such as the United States Code Annotated, on the other

hand, are rare, but, when they occur, the rendition of the law

contained in the Statutes at Large controls.4 See United States 

Nat'l Bank v. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 

448 (1993).

 Having made the determination that section 2251(a)

actually contains (and thus is to be read with) a comma after the

phrase "with the intent that such minor engage in," we readily

conclude that the district judge described the essential elements

of the offense correctly in his jury instructions. With the

comma in place, we regard the proper interpretation of the

statute as self-evident. Wherever possible, statutes should be

construed in a commonsense manner, O'Connell v. Shalala, 79 F.3d 

170, 176 (1st Cir. 1996), honoring plain meaning, In re Thinking 

Machines Corp., 67 F.3d 1021, 1024-25 (1st Cir. 1995), and 

avoiding absurd or counterintuitive results, Sullivan v. CIA, 992 

F.2d 1249, 1252 (1st Cir. 1993).

 In this instance the phrase in question, read

naturally, modifies only the transportation category. Any other

reading would defeat the linguistic parallelism which marks

section 2251(a) and would result in a curiously lopsided piece of
  

 4In all events, recent versions of the United States Code
(as opposed to the United States Code Annotated) include a comma
at the critical place.

 11

legislation.5 Here, too, a construction consistent with plain

meaning comports with the logic of the statute. One who

persuades a minor to engage in sexually explicit conduct, or who

has a minor assist another person in such conduct, commits an act

which in and of itself is worthy of criminal sanction. By

contrast, one who transports a minor across state lines (no more,

no less) has done nothing inherently wrong unless his intent at

the time is blameworthy. On that basis, the idea that section

2251(a) embodies an additional scienter requirement (having an

intent that the minor thereafter engage in proscribed conduct)

solely with reference to the transportation category is both

easily explicable and eminently sensible. Cf. O'Connell, 79 F.3d 

at 176 (counselling courts to examine "the statute as a whole,

giving due weight to design, structure, and purpose as well as to

aggregate language").

 The history of section 2251(a) supports this

interpretation. Congress amended the law in 1986 to engraft the

transportation category (including the disputed phrase) onto

section 2251(a). Prior to this amendment, the use category, like

the assistance category, required proof only of the three

elements that the judge included in his charge. See Pub. L. 95- 

225, 2(a), 92 Stat. 7 (1978). To suggest, in the absence of

any confirmatory legislative history, that the 1986 amendment

added a new intent element to both the use and assistance
  

 5As mentioned earlier, the statute criminalizes three
separate types of conduct, and each category is described in a
clause ending with the words "engage in."

 12

categories, instead of merely supplying an additional, self-

contained category, strains credulity. See generally 

Passamaquoddy Tribe v. State of Me., 75 F.3d 784, 788-89 (1st 

Cir. 1996) (in interpreting statutes, courts should take into

account preexisting statutory provisions).

 To recapitulate, we hold that the phrase "with the

intent that such minor engage in" sexually explicit conduct does

not apply to the use category of section 2251(a). It follows

that the trial court's instructions accurately limned the

essential elements of the offense.

 III. III. 

 Conclusion Conclusion 

 We need go no further. Having dispatched the seeming

grammatical anomaly, no serious question remains. It clearly

appears that the appellant was fairly tried and lawfully

convicted. Accordingly, the judgment below must be

Affirmed. Affirmed. 

 13