**UNITED STATES POSTAL SERVICE,**
Plaintiff–Appellee,

v.

**C.E.C. SERVICES, Defendant–Appellant.**

**No. 606, Docket 88–6196.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 1989.

Decided March 6, 1989.

Elizabeth St. Clair, New York City (David B. Goldstein, Rabinowitz, Boudin, Standard, Krinsky & Lieberman, P.C., New York City, of counsel), for defendant-appellant.

Kathleen M. Mehltretter, Asst. U.S. Atty. W.D. New York, Buffalo, N.Y. (Dennis C. Vacco, U.S. Atty. W.D. New York, Buffalo, N.Y., of counsel), for plaintiff-appellee.

Before KAUFMAN, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

This appeal presents the question of whether the denial of a Fed.R.Crim.P. 41(e) motion for return of property seized pursuant to two search warrants is appealable by a party which was, but is no longer, the subject of a grand jury investigation. We hold that it is. In addition, we affirm the district court's upholding of the search warrants.

## BACKGROUND

In July 1987, United States postal inspectors applied for a search warrant for the premises of C.E.C. Services ("CEC") at "1030 Rand Building" on the basis of an affidavit of a postal inspector. The affidavit stated that the Postal Service and U.S. Customs had intercepted over 13,000 pieces of mail, originating from CEC, that contained lottery material indicating a possible violation of 18 U.S.C. § 1302 (1982). That provision prohibits generally the sending of mail concerning lotteries or similar schemes offering prizes dependent in whole or in part upon lot or chance. The affidavit related information obtained from an employee of CEC and described CEC's telemarketing operations. These consisted mainly of telephone solicitation efforts aimed at selling shares in groups entering various lotteries in Canada. Mailings were often made to prospective players on referrals from telemarketers. CEC received entries and proceeds through a post office box in Niagara Falls, New York. In addition, United States Customs officials had seized a package containing lottery advertisements or brochures, including a return envelope addressed to CEC in Niagara Falls that had been mailed from Canada to an addressee in the United States. The government attached the package as an exhibit to the warrant application.

A search warrant was issued for the following property:

Business, personnel and financial records of the entities named herein;

Any records relating to the employment of solicitors, telephone personnel, and office personnel;

Lists of customers' names and addresses and amounts of contributions and related records including payments and payment receipts, memorandum and notes;

U.S. Mail and stamps and envelopes and correspondence;

Any banking records of the entities named herein including, but not limited to, statements, checks and checking books, and deposit slips;

Any records of disbursements of funds, including, but not limited to, payroll, utilities, rent, telephone bills, daily sales figures;

Any records of mailing and telephone calls including, but not limited to, memorandums, messages, telephone directories, tally sheets, and daily sales figures;

Sales pitch sheets and any other material relating to the solicitation by phone performed by any person on behalf of the entities named herein;

Any and all articles of incorporation, certificates to conduct business, certificates or registrations to solicit within the State of New York or the United States;

Contracts or any written agreements between any and all parties of the entities named herein, either between one another, with advertising agencies, service agencies, or other entities performing or receiving goods, services, money from the entities listed herein;

All telephones and telephone equipment installed;

All of which property related to the operation and functioning of the entities described herein and persons soliciting or

otherwise performing work on their behalf as described in the attached sealed affidavit.

When the warrant was executed, substantial amounts of papers, records, and office equipment were seized, but the only business found to be operating at Room 1030 was the sale of lottery shares. During execution of the first warrant, however, postal inspectors had observed that Room 1000 Rand Building was being used by CEC as a mailing room, including the mailing of lottery advertisements. Another warrant was obtained to search that room and was executed.

CEC moved pursuant to Fed.R.Crim.P. 41(e) for a return of the seized property. The district court denied the motion, and CEC brought the present appeal.

## DISCUSSION

■ We must first decide whether the denial of a Fed.R.Crim.P. 41(e) motion for a return of seized property is appealable. *DiBella v. United States*, 369 U.S. 121, 131–32, 82 S.Ct. 654, 660–61, 7 L.Ed.2d 614 (1962), held that the denial of a preindictment Rule 41(e) motion is appealable only if the motion is "solely for the return of property and is in no way tied to a criminal prosecution *in esse* against the movant." In *Standard Drywall, Inc. v. United States*, 668 F.2d 156 (2d Cir.), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982), we read *DiBella* to mean that a denial of a Rule 41(e) motion is not appealable when the party moving for return of the seized property is the subject of an

ongoing grand jury investigation. *See also Church of St. Matthew v. United States*, 845 F.2d 418 (2d Cir.1988) (per curiam). In such circumstances, a Rule 41(e) motion is by its terms an attempt to suppress that property as evidence as well as to regain possession of it. Because a denial of a motion to suppress is not appealable except as part of a final judgment, appeals from denials of Rule 41(e) motions cannot be allowed where there is an ongoing grand jury lest they circumvent the rule against interlocutory appeals. *Standard Drywall* emphasized, however, that because the term of the grand jury is limited, the danger that denial of review in such circumstances would result in indefinite government retention of the property was minimized. *Id.* at 419.

■ The instant case differs from *Standard Drywall* in that the grand jury investigating CEC has been discharged without returning an indictment, and review of a denial of a motion for the return of seized property creates no danger of interference with an ongoing grand jury. Moreover, were we to decline appellate jurisdiction merely because of the pendency of a criminal investigation of uncertain duration, CEC would be subjected to an indefinite postponement of an opportunity to test on appeal its right to possession. We thus have appellate jurisdiction.

■ Turning to the merits, we must resolve whether the search warrants violated the First or Fourth Amendments. We address these issues seriatim.[1]

---

1. There was clearly probable cause to believe that CEC was violating 18 U.S.C. § 1302. Section 1302 makes it illegal to knowingly mail "any newspaper, circular, pamphlet, or publication of any kind" containing "any advertisement of any lottery, gift enterprise, or scheme of any kind offering prizes dependent in whole or in part upon lot or chance," or "any list of prizes drawn or awarded" by means of any such lottery or similar enterprise. The mailing of the brochures seized by Customs would constitute a violation of Section 1302. Moreover, advertising literature offering participation in various lottery groups formed by CEC was mailed from 1000 and 1030 Rand Building to addressees in the United States. Some of this literature directed responses to the box in Niagara Falls.

Probable cause was thus established that the alleged activities violate Section 1302, unless CEC clearly fell within the exemption to Section 1302 in Section 1307. CEC argues that it is exempted by Section 1307(b)(2), the provision dealing with foreign lotteries, which reads:

 (b) The provisions of sections 1301, 1302 and 1303 shall not apply to the transportation or mailing . . .
 (2) to an *addressee within a foreign country* of equipment, tickets or material *designed to be used within* that foreign country in a lottery which is authorized by the law of that foreign country.

(emphasis added). Solicitations sent by CEC to addressees within the United States, however, are plainly outside this exemption. CEC's solicitations sent to foreign addresses also fail to

CEC argues that its alleged solicitation was commercial speech protected by the First Amendment, and that there was therefore no valid basis for the search and seizure. At this stage of the proceedings, where only probable cause is at issue, we need not delve into the intricacies of CEC's constitutional challenge to the statute as applied to it. So long as the statute is not facially unconstitutional, the district court's finding of probable cause cannot be disturbed. We note that existing precedent, from which we decline to depart, supports the facial constitutionality of the statute. *See, e.g., Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico,* 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986); *Central Hudson Gas and Elec. Corp. v. Public Serv. Comm'n,* 447 U.S. 557, 563–64, 100 S.Ct. 2343, 2350, 65 L.Ed. 2d 341 (1980); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed. 2d 669, *reh. denied,* 414 U.S. 881, 94 S.Ct. 30, 38 L.Ed.2d 128 (1973); *New York State Broadcasters Ass'n v. United States,* 414 F.2d 990 (2d Cir.1969), *cert. denied,* 396 U.S. 1061, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970). The Supreme Court soon will deal with some of the relevant constitutional questions in *Minnesota Newspaper Ass'n, Inc. v. Postmaster General of the United States,* 677 F.Supp. 1400 (D.Minn.1987), *prob. juris. noted,* —— U.S. ——, 109 S.Ct. 51, 102 L.Ed.2d 30 (1988). We perceive no reason to quash this search warrant in anticipation of a broad Supreme Court decision that would fatally undermine the finding of probable cause.

Finally, the search warrants described the items to be seized with sufficient particularity. The affidavit of the postal inspector provided adequate support for the finding of probable cause that the entire business of CEC was engaged in violating 18 U.S.C. § 1302. The affidavit recounted the operation of the telemarketing business aimed at selling and mailing information concerning shares of a lottery pool. It clearly connected mailings to the telephone solicitations in which some potential players reached by phone were sent additional information by mail. As it would be virtually impossible to segregate documents or records not related to mailings from those related, the district court properly concluded that an entire business was involved. When the criminal activity pervades that entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements. *National City Trading Corp. v. United States,* 635 F.2d 1020, 1024–25, 1026–27 (2d Cir.1980).

AFFIRMED.

come within the exemption. The exemption's purpose was to allow United States manufacturers to export lottery-related materials for use in foreign countries, H.R.Rep. No. 45, 96th Cong., 1st Sess. 2, *reprinted in* 1979 U.S.Code Cong. & Admin.News 1645, 1646, not to attract players to ongoing lotteries. Similarly, CEC is not covered by exemption (b)(1), permitting mail within and into the state operating the lottery.