**UNITED STATES of America Plaintiff**

**v.**

**Andres HERNANDEZ Defendant**

**No. CRIM. 01–635(SEC).**

United States District Court, D. Puerto Rico.

Jan. 4, 2002.

Rachel Brill, Hato Rey, PR, Francisco Rebollo–Casaldue, San Juan, PR, for defendant.

Pretrial Services, U.S. Pretrial Services, San Juan, PR, Jorge E. Vega–Pacheco, U.S. Attorney's Office District of P.R., Criminal Division, Hato Rey, PR, for plaintiffs.

## OPINION AND ORDER

CASELLAS, District Judge.

Perhaps the most fundamental of all the guarantees bestowed upon the citizens by the Constitution are those incarnated in the simple and powerful language of the First Amendment. Although much importance is given, and rightly so, to a person's freedom to speak his/her mind against the ideas of the many, to associate him/herself with whoever he/she pleases, and to hold and practice freely his/her religious beliefs, if any; the First Amendment is most central to the very idea and notion of our juridical order because it protects the most basic of all human freedoms: the right to think. "Intellect annuls fate. So far as a man thinks, he is free." Ralph Waldo Emerson, "Fate," *The Conduct of Life* (1860). The capacity for thought is probably the most quintessential of all human virtues and vices. It is through thought that emotions are tempered by reason, and vice versa, to give fruit to all the effects of human endeavor: communication, destruction, and creation. The importance of thought to our most basic concept of ourselves is perhaps most evident in Descartes's philosophical inevitability: *Cogito ergo sum.*

The First Amendment arises, then, as the guardian, first and foremost, of every citizen's freedom to think whatever he/she wants; thereby guaranteeing his/her social and political capacity for autonomy. The reach of this protection is vast, precisely because the reach of the human mind is ineffably vast. "The secret thoughts of a man run over all things, holy, profane, clean, obscene, grave, and light, without shame or blame." Thomas Hobbes, *Leviathan* (1651). And the Constitution recognizes the validity of every single one of those thoughts. It is not until thought becomes action that the state may legitimately intercede. In such a way is the very idea of thoughtcrime eradicated from our constitutional reality.

However, the First Amendment cannot simply guarantee that we will not be punished for our thoughts and sit idly by as our ability to express those thoughts, and share them with others, is taken away. The human condition is as much a collective condition as an individual one. Therefore, the Constitution not only protects our thoughts, but also the action of expressing those thoughts. One of the ways in which the First Amendment's ultimate goal is achieved, then, is by protecting the citizens' right to speak freely. However, it is clear that certain activities which might involve expression, in the common sense of the word, might very well hinder the development of that freedom of thought which is at the heart of the Constitution's protections. Perhaps the most disturbing and resounding example of such an activity is the creation and dissemination of child pornography.

Child pornography necessitates the participation of children in an adult's expressive activity. Furthermore, it necessitates the participation of children in a part of human behavior, sex, which our society, based on natural law and reason, has limited to the realm of adults. Sex is one of the most intimate and transcendental facets of our lives. As such, society has come to value very highly the existence of intelligent consent when it comes to sexual activity. Children are incapable of such consent with regards to sex. Hence, the forced participation of children in sexual activity is sure to bring about trauma and abuse. The employment of such means for the

sake of the expression of somebody's sexual fantasies or ideas is, therefore, highly destructive to the child's own freedom of thought. The First Amendment, hence, cannot protect such abuse of a child's freedom and dignity. What is prohibited is not the thoughts and fantasies of the adult, but the harm done to the children.

"The crime punished by the statutes against the sexual exploitation of children, however, **does not consist in the cravings of the person posing the child or in the cravings of his audience. Private fantasies are not within the statute's ambit.** The crime is the offense against the child—the harm 'to the physiological, emotional, and mental health' of the child, *New York v. Ferber*, 458 U.S. 747, 758, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982); the 'psychological harm,' *id.* at 775, 102 S.Ct. at 3364 (O'Conner [sic], J., concurring); the invasion of the child's 'vulnerability.' *Id.* at 776, 102 S.Ct. at 3364 (Brennan, J., concurring). These harms collectively are the consequential damages that flow from the trespass against the dignity of the child." *United States v. Wiegand,* 812 F.2d 1239, 1245 (9th Cir.1987) (emphasis added).

Nonetheless, we must bear in mind that at the bottom of every child pornography case, lie the conflicting interests of free expression and a child's own particular autonomy and dignity. For example, it is clear that nude images of children must be available for uses not related to sex such as scientific and/or medical purposes. This is why when someone is accused of possessing or trafficking child pornography, the definition of what constitutes pornography must be studied and defined quite carefully. In such cases, then, we must strive to attain an acceptable balance between the two crucially important interests involved.

**Background**

In the above-captioned case, Defendant was indicted for possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The indictment in this case is based on deleted images that were retrieved through special equipment by government agents from a computer that was seized from Defendant's home. The computer was obtained pursuant to a search warrant issued on July 31, 2001 by U.S. Magistrate–Judge Jesús A. Castellanos on the basis of an affidavit sworn by FBI Special Agent Omayra Meléndez, which was not based on any of the images which were later found in the computer (and which now form the basis of the indictment). The affidavit sought to establish probable cause to search Defendant's home based on a description of several photographs that he had allegedly shown to two minors on July 19, 2001 and which the affiant stated constituted child pornography.

Before the Court is Defendant's "Motion to Suppress the Fruits of the Search Warrant" (Docket # 27). In it we are asked to exclude the fruits of said search of Defendant's home. Defendant argues that the warrant was issued without a sufficient showing of probable cause. Essentially, he contends that the description given by the affiant of the pictures which Defendant had allegedly shown to the two young girls was not sufficiently detailed to establish probable cause that Defendant was in possession of child pornography. Although we agree with Defendant that, under the prevailing jurisprudence in the First Circuit, the description of the photographs contained in the affidavit was not specific enough to allow the magistrate to reach the conclusion that there was probable cause that those particular pictures constituted child pornography, we nonetheless find that **the totality of the circum-**

stances described in said affidavit were enough to support a finding of probable cause that a search of Defendant's house would result in the recovery of child pornography. Furthermore, we understand that the good-faith exception to the exclusionary rule created in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) would apply in this case, if it were to be determined that the warrant was issued without probable cause. Therefore, after considering Defendant's arguments in his motion, as well as the Government's opposition (Docket # 35) and Defendant's reply to said opposition (Docket # 40), Defendant's motion is **DENIED.**

### Applicable Law and Analysis

### I. Standard of Review

 The Fourth Amendment asserts the people's right to be secure in their homes from governmental searches and seizures and requires that no warrant issue except upon a judicial finding of probable cause. "The standard by which the sufficiency of a warrant is measured for searching for photographs is the same standard as that used in justifying a warrant for other forms of contraband," and it "is the standard set by *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)." *Wiegand*, 812 F.2d 1239 (child pornography case), *citing New York v. PJ Video, Inc.*, 475 U.S. 868, 106 S.Ct. 1610, 1615, 89 L.Ed.2d 871 (1986). Pursuant to *Gates*, the issuing magistrate must make a practical, common sense determination that the circumstances set forth in the affidavit establish a fair probability that evidence of a crime, in this case, of child pornography, will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527(1983). Courts of Appeal must ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.* at

236, 103 S.Ct. 2317. The magistrate, in turn, must have made a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. It is important to note also that "[w]e are, of course, to interpret affidavits for search warrants 'in a commonsense and realistic fashion.' *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). And, as [was] said in *United States v. Hershenow*, 680 F.2d 847, 852 (1st Cir. 1982), 'the magistrate is entitled to go beyond the averred facts and draw upon common sense in making reasonable inferences from those facts.' " *United States v. Falon*, 959 F.2d 1143, 1147 (1st Cir.1992).

It is also of crucial importance to remember in this case, as we will later see, that a "warrant application must demonstrate probable cause to believe that a particular person has committed a crime— 'the commission element'—*and* that enumerated evidence relevant to the probable criminality likely is located at the place to be searched—'the "nexus" element.' " *United States v. Zayas Díaz*, 95 F.3d 105, 110–11 (1st Cir.1996).

### II. Standard in Child Pornography Cases

With this in mind, we need to delve deeper into how these standards have been applied specifically to child pornography cases, in which, as we discussed above, First Amendment concerns are also quite present at all times. Some of the first cases to deal with this issue came out of the Ninth Circuit Court of Appeals. In *United States v. Smith*, 795 F.2d 841 (9th Cir.1986), the court had to decide whether

an affidavit stating that some photos connected to the defendant had been found to depict explicit sexual conduct of children by the affiant. The photos were not shown to the magistrate, even though they were available. Although the court held that the "presentation of the photos with the affidavit would have been the ideal course... this omission [was not] fatal to the warrant in light of the affidavit taken as a whole." *Id.* at 847. The court further held that "[a]lthough more specific descriptions of the photographs would have been desirable, we note that the affidavit specifically refers to violation of section 2251, directing the magistrate to the child pornography statute and its definitions. These definitions are quite specific, and the magistrate reasonably considered the statement of an experienced postal inspector that the photos depicted 'sexually explicit conduct' within the statute." *Id.* at 848. **The court's holding was also strongly bolstered by the fact that the affidavit did not stand on the evaluation of the photographs alone.** It also revealed "a statement by a pediatrician that the girls were under eighteen, Smith's admission that he took the pictures, Smith's declaration that he 'would just have to take more' if the pictures were not returned to him, and statements by two of the girls that they had posed for Smith's pictures and that Smith kept a 'whip-like' device at his residence." *Id.* at 849.

### III. Lascivious exhibitions

The issue of how detailed the description must be, however, could very well depend on the type of "sexually explicit conduct" at issue. The child pornography statute involved in all these cases defines "sexually explicit conduct" as actual or simulated: (A) sexual intercourse...; (B) bestiality; (C) masturbation; (D) sadistic or masochistic abuse; or (E) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256. The first four categories of this definition have clear and specific meanings. However, the fifth category is a lot more problematic. This is the category into which the pictures involved in the present case fall. In *Smith,* the conduct involved was sadistic or masochistic abuse and, hence, did not raise too many problems. But in subsequent cases having to do with the "lascivious exhibition" the issue is more complicated.

■ In *Wiegand,* the Ninth Circuit Court of Appeals affirmed the District Court's decision in *United States v. Dost,* 636 F.Supp. 828 (S.D.Cal.1986). *Dost* set out a six-factor test for determining whether a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area" which has been cited and used by almost every court that has had to face this issue since. The factors are:

(1) whether the genitals or pubic area are the focal point of the image;

(2) whether the setting of the image is sexually suggestive (i.e. a location generally associated with sexual activity);

(3) whether the child is depicted in an unnatural pose, or inappropriate attire considering his/her age;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and

(6) whether the image is intended or designed to elicit a sexual response in the viewer.

*Dost,* 636 F.Supp. at 832. Applying those factors, the *Dost* court found that pictures of naked girls in which the private parts were the prominent focal point, and where this was accomplished by unusual poses

which bordered on the acrobatic and which included the opening of the girls' legs, constituted child pornography. It should be noted that the District Judge in *Dost* was able to see the pictures himself, so the level of detail involved in the description given in the affidavit was not an issue. It should also be noted that the Ninth Circuit Court did state in *Wiegand* that it thought that [t]he standard employed by the district court [in *Dost*] was over-generous to the defendant in implying... that the pictures would not be lascivious unless they showed sexual activity or willingness to engage in it." *Wiegand*, 812 F.2d at 1244. Nonetheless, the *Dost* factors have received a practically unanimous endorsement by the federal courts.

In particular, the First Circuit Court of Appeals has consistently applied the *Dost* test, although it has made clear that these factors "are not exhaustive: other factors may be relevant, depending upon the particular circumstances involved.... The inquiry will always be case-specific." *United States v. Amirault*, 173 F.3d 28, 31–32 (1st Cir.1999). In *Amirault*, the court faced a situation where the District Judge had seen the photo himself. The court held that the photograph did not constitute child pornography under the *Dost* factors. The private parts were not the focal area, the child was not in an unnatural pose, her legs were not spread apart, she was not wearing any sexually suggestive clothing, and there was nothing in the girl's expression or posture that demonstrated a clear willingness to engage in sexual activity. *Id.* at 33–34. The court further explained with respect to the sixth *Dost* factor that "in determining whether there is an intent to elicit a sexual response, the focus should be on the objective criteria of the photograph's design," and not on the actual effect of the photograph on the viewer. *Id.* at 34–35. No such intent to elicit a sexual response appeared to be present.

The court concluded that "the only truly striking aspects of the photograph [were] the girl's nakedness and her youth." *Id.* at 35. "Yet, the statute requires more than nudity." *Id.* at 33. "These factors alone are not enough to render the photo 'lascivious.'" *Id.* at 35.

In the most recent child pornography case, the First Circuit faced a situation very much like the one before us today. In *United States v. Brunette*, 256 F.3d 14 (1st Cir.2001), defendant argued that the warrant application failed to establish probable cause to search because it did not include copies or descriptions of the allegedly pornographic images to justify the search. The search warrant was issued based on the affidavit of a U.S. Customs agent who had viewed the images and averred that all of them appeared to be within the statutory definition of child pornography, specifically, "photographs of a pre-pubescent boy lasciviously displaying his genitals." *United States v. Brunette*, 76 F.Supp.2d 30, 37 (D.Me.1999). The court concluded that because the magistrate judge did not independently view the images, and because the affidavit did not adequately describe them, the warrant was not supported by probable cause.

In *Brunette*, the pictures were seen by neither the magistrate, the District Judge, nor the Court of Appeals. What the affidavit was based on, as is the case before us, was merely the affiant's description of the pictures. In *Brunette*, this description amounted to a conclusory statement that the pictures met the statutory definition of child pornography. "This bare legal assertion, absent any descriptive support and without an independent review of the images, was insufficient to sustain the magistrate judge's determination of probable cause." *Brunette*, 256 F.3d at 17. The court further held that only if there is probable cause to believe that a given im-

age falls within the statutory definition of child pornography may a search warrant issue. *Id.* at 18. "A judge cannot ordinarily make this determination without either a look at the allegedly pornographic images, **or at least an assessment based on a detailed, factual description of them.**" *Id.* (emphasis added). "Unsupported conclusions [of an officer] are not entitled to any weight in the probable cause determination." *United States v. Vigeant,* 176 F.3d 565, 571 (1st Cir.1999). "This judicial determination is particularly important in child pornography cases, where the existence of the criminal conduct often depends solely on the nature of the pictures." *Brunette,* 256 F.3d at 18. It should be noted, however, that the court in *Brunette* did not exclude the evidence since it understood that the *Leon* good-faith exception was applicable in that case. This issue will be discussed further on.

Other Circuit Courts have also applied the *Dost* factors in a variety of situations. *See United States v. Moore,* 215 F.3d 681 (7th Cir.2000) (pictures of naked boys and girls in unnatural positions with sexually suggestive captions constituted lascivious exhibitions); *United States v. Horn,* 187 F.3d 781 (8th Cir.1999) (videotapes which freeze-framed images of naked girls when their private parts were most exposed held to be child pornography); *United States v. Hall,* 142 F.3d 988 (7th Cir.1998) (computer technician's statement to affiant that pictures showed minors **engaged in sexual activity** held to be enough to support a finding of probable cause); and *United States v. Wolf,* 890 F.2d 241 (10th Cir.1989) (picture of a sleeping, partially nude girl held to constitute a lascivious exhibition where the focus of the photo was on the private parts, the girl was wearing inappropriate attire while lying in bed, and her legs were spread apart in an unnatural position).

## IV. Application of the *Dost* Test to the Description of the Photographs

Having considered all these cases in which several Circuit Courts of Appeal have applied the *Dost* factors to determine whether specific visual depictions constitute "lascivious exhibitions," we can proceed to discuss the description given in the affidavit of the picture allegedly shown to the two young girls in the case before us. The affidavit merely states that the victims were shown approximately five pictures of the same girl in different poses. Affidavit given by Omayra Meléndez before U.S. Magistrate–Judge Jesús A. Castellanos at page 4, ¶ 10 (July 7, 2001) (Docket # 35, Attachment 1). "The victims described the pictures as a blond girl with no clothes on, trying to put on a ballerina outfit, with lots of necklaces around her neck." *Id.* Clearly, the description of the pictures given in the affidavit is far from the "detailed, factual description" required by the First Circuit Court in *Brunette.* Nonetheless, we shall go through the *Dost* factors, one by one.

First, the description does not shed any light at all on whether the genitals or pubic area were the focal point of the photograph. As a matter of fact, the affidavit does not even state whether the private parts were visible at all. All we know is that the girl was naked.

With respect to the setting of the image, we are told nothing at all. There is, therefore, no way to know whether the setting was sexually suggestive or not. It could have very well been set in a ballet hall, which would be a very logical place for the girl to be in while putting on a ballerina outfit.

The affidavit does describe the attire involved in the photograph. The girl was depicted trying to put on a ballerina outfit. Such an outfit does not strike the court as

inappropriate attire considering her age. Of course, many young girls do participate in ballet and wear the corresponding outfits. We cannot say, either, that such an outfit is sexually suggestive in itself. The description of the picture does not give us any reason to think that in this particular case it was. We cannot even conclude whether the girl was putting on her outfit without any underwear. Although such a description could suggest something sexual about the image, no such details are specified. The addition of the necklaces does not drive us to such a conclusion either. Young girls are often seen wearing many necklaces, and dressing up with their mothers' or sisters' jewelry. Necklaces around her neck and a ballerina outfit, by themselves, do not amount to inappropriate attire for a young girl.

The affidavit does not say anything about the girl's pose while trying to put on her outfit. We, simply, cannot reach any conclusion as to how unnatural a girl trying to put on an outfit might appear. We do not know the angle from which the picture was taken. We do not know whether her legs were spread apart, whether she was sitting down, standing, kneeling, laying down, or bending over. We have no details to build upon.

The fourth factor is the only one that is truly mentioned in the description. We are told that the girl had no clothes on. It should be noted, however, that we do not know how successful the girl had been in putting on her ballerina outfit, so we cannot be sure just how naked the girl was. But we shall assume, *arguendo*, that the girl was completely naked for all practical purposes.

Lastly, there is nothing in the affidavit to suggest any willingness on the girl's part to engage in sexual activity. If anything, the image described rings more of a girl playing with her ballerina outfit or getting ready for practice in a casual innocent fashion. The lack of any details about the girl's pose, body language, or facial expressions, as well as the lack of a description about the camera angle, the composition and setting of the photograph, and the ability to see the girl's private parts, does not allow us to determine whether the image was intended or designed to elicit a sexual response, either.

In conclusion, we find that the only one of the six factors is met in this case. As we have previously discussed, however, "the statute requires more than nudity." *Amirault*, 173 F.3d at 33. We must conclude, like the First Circuit Court in *Amirault*, that "the only truly striking aspects of the photograph [were] the girl's nakedness and her youth." *Id.* at 35. "These factors alone are not enough to render the photo 'lascivious.'" *Id.* Therefore, we find that the description of the photographs given in the affidavit, by itself, was not enough to establish probable cause that Defendant was in possession of child pornography.

## V. Totality of the Circumstances

◼ Notwithstanding the fact that the description of the photographs does not pass the *Dost* test, the Government argues that there are enough other facts in the affidavit that support the finding of probable cause. We agree that under the "totality of the circumstances test" all the other information contained in the affidavit is pertinent to the determination of whether there was a substantial basis for the finding of probable cause. Taking into consideration Defendant's highly inappropriate conduct, and the totality of the circumstances which were described in the affidavit, we find that there was such a substantial basis.

FBI Agent Omayra Meléndez included in the affidavit four categories of informa-

tion which we will now discuss, and which the Government argues combine with the description of the photographs to establish probable cause. First, the affidavit contains a description of how Defendant allegedly approached the young girls, invited them to his house, offered them drinks, showed them the pictures on his computer, and asked them to remove their shirts. Affidavit at 3–4. While it might be true, as Defendant points out that this behavior does not constitute a federal crime, it is also undeniable that such extremely inappropriate behavior, which might very well constitute a state crime, is relevant to the analysis of the issues before us. The fact that a grown man, without being acquainted with them, invites young girls to his house, shows them pictures of naked girls (even if those picture might not constitute child pornography *per se* ), and asks them to take **off their clothes,** is very suggestive of criminal intent related to child pornography. Although this information by itself, would not constitute probable cause for the issuance of a search warrant by a federal court, it surely bolsters a magistrates finding which, under *Gates,* must be based, not on one particular factor, but on the totality of the circumstances.

The affidavit also contained a narration of a previous occasion in which Defendant had been seen by a camp instructor allegedly "wandering around the area where the kids were and was looking at the kids in a very insisting manner." *Id.* at 5. The instructor also reported an incident in which Defendant allegedly approached a ten-year old girl and asked her to come to his house with him. *Id.* Furthermore, that girl's mother stated that she had heard about an incident with Defendant where he tried to molest another girl. *Id.* These are troubling accusations which point towards inappropriate behavior. Although the court agrees with Defendant that they do not, by themselves, constitute probable cause that a federal crime was committed by Defendant, these descriptions point toward the conclusion that Defendant is an individual who is more likely to have child pornography in his house than anyone else. These statements are vague, and in some cases consist of double or triple hearsay. Therefore, the Court cannot place too much credibility on these uncorroborated rumors which are included in the affidavit. Nonetheless, they still constitute circumstances which may be taken into account when considering an application for a warrant. And given the other factors discussed before (the description of the photographs of naked girls, and Defendant's request to the two young girls that they take their clothes off), these accusations begin to look more credible and trustworthy.[1]

---

1. The Government also contends that all this general information about Defendant's conduct establishes a profile of a "preferential sex offender." The affidavit contains a discussion on such offenders and describes them as individuals who receive sexual gratification, stimulation and satisfaction from actual contact with children, from fantasies they have while viewing children engaged in sexual activity or in sexually suggestive poses, or from literature describing such activity. *Id.* at 6. According to the affidavit, preferential sex offenders maintain and possess pornographic material, as well as lists of names, addresses and telephone numbers of individuals with whom the have been in contact and who share their same interest in child pornography, in the privacy and security of their homes or some other location, and typically retain it for many years. *Id.*

However, Agent Meléndez can hardly be described as an expert in the area of preferential sex offenders. Hence, her conclusory statements are not convincing. Furthermore, the term "preferential sex offender" is never adequately defined or explained in the affidavit. The Government uses the different term "pedophile" in its opposition to the motion to suppress. The difference between the two

Lastly, there is a discussion in the affidavit regarding how computers are used to transmit and collect child pornography. Affidavit at 7–16. This information is very useful in establishing the "nexus" requirement of probable cause, discussed earlier. This, of course, makes it likelier that child pornography would actually be recovered from a search of Defendant's **computer,** and therefore bolsters the magistrate's issuance of the warrant.[2]

## VI. The *Leon* Good Faith Exception

■ Nonetheless, even if we were to find that the search warrant had been issued without the requisite showing of probable cause, we conclude that the *Leon* good faith exception would require that the fruits of the search not be excluded from trial in the case before us. In *Leon,* 468 U.S. 897, 104 S.Ct. 3405, the Supreme Court held that a search warrant had been issued without a sufficient showing of probable cause. Nonetheless, the Court refused to exclude the fruits of the search based on that fact. The opinion explained that the exclusionary rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a

personal constitutional right of the party aggrieved. *Id.* at 906, 104 S.Ct. 3405. "Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" *Id.* citing *Gates,* 462 U.S. at 223, 103 S.Ct. 2317. The Court in *Leon* concluded, then, that suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purpose of deterring police misconduct. *Id.* at 918, 104 S.Ct. 3405. Hence, when an officer relies in good faith on the magistrate's issuance of a warrant, and conducts a search which he believes is legal, the evidence will not be excluded, since no deterrent purpose can be furthered. This is what is known as the good faith exception.

■ Under *Leon,* the "government bears the burden of showing that its officers acted with good faith." *Brunette,* 256 F.3d at 17. "To make this assessment, we evaluate all of the attendant circumstances at the time of the warrant application and its execution." *Id.* Hence, objective good

categories is never explained. *See United States v. Weber,* 923 F.2d 1338 (9th Cir.1990).

2. It is also worth mentioning at this point that we find serious issues with the way in which the Government is trying to use the description of Defendant as a pedophile/preferential sexual offender. We find this unstructured and non-rigorous profiling of Defendant troubling. Even if the Court could conclude beyond any doubt that a person "has a propensity for conduct typical of a pedophile" (or of a drug-trafficker, or of a money-launderer, or of a terrorist), that, **by itself,** does not provide a legitimate legal basis to support an entry into that person's home in search of evidence of that tendency absent evidence of the actual commission of a crime. Such governmental overreaching is precisely why profiling of a suspect is not a sound legal basis for a war-

rant: basing any judicial deprivation of a person's life, liberty or property on such unrestricted "profiling" of individuals is contrary to the most elementary principles of due process.

Similarly, an FBI agent's belief that Defendant met the undefined profile of a pedophile is not enough to sustain a finding of probable cause to search his home for child pornography. More evidence of the probability of the commission of a crime is necessary. This is precisely what the affidavit's description of the photographs, and of Defendant's conduct with the girls and in the past provided. Hence, in this particular case, we can conclude, based on this other evidence, that there was enough meat in the affidavit to sustain the magistrate's finding of probable cause.

faith reliance turns on the totality of the circumstances, but in *Leon*, the Supreme Court indicated four situations in which reliance on the police would not be reasonable. *Id.* 104 S.Ct. at 3420–21. In all of them, good faith is absent: 1) the information provided by the officer in the affidavit is deliberately misleading or provided with reckless disregard; 2) the issuing magistrate ceased to play a neutral role; 3) the affidavit is so lacking in indicia of probable cause that the officer's belief is entirely unreasonable; 4) the warrant is so defective that the officer who executed it could not presume it was valid. *Id.* We find that, in the case before us, there is no reason to think that the first, second or fourth situations are present. Defendant does not claim that any of the information in the affidavit is false, that the magistrate was in any way prejudiced or unfair, or that the warrant was defective in itself. There is nothing in the record that would suggest the falsehood of the affidavit or any improper behavior by the magistrate. Furthermore, the warrant specified the place to be searched, the evidence sought and the time for the search with sufficient particularity.

 Defendant claims, however, that the affidavit was so lacking in indicia of probable cause that the officer's belief that the warrant was valid was entirely unreasonable. We disagree. As is evident from our previous discussion, the determination of probable cause for the issuance of a search warrant in child pornography cases is extremely complicated and fact-sensitive. Furthermore, the FBI, in this case, was dealing with a description of photographs given by two very young girls. We think it is somewhat naive to expect that young children will be able to make the kind of detailed descriptions of photographs that the jurisprudence seems to require of them. Such mature interpreta-

tions of a photograph's intention to elicit a sexual response, or of its depiction of children in unnatural poses or inappropriate attire, can hardly be expected of these young children. We, therefore, cannot agree with Defendant that it was unreasonable to think that the issuance of the warrant was proper.

We believe that the issue involved in this case was, at the very least, a very close one, and that the Government's arguments, particularly the one about how declarations in the affidavit about Defendant's inappropriate behavior helped to fulfill the requirements of *Gates*'s "totality of the circumstances" test, were solid arguments which had merit. We cannot find that the Government was unreasonable in thinking that the affidavit could have been enough to satisfy the burden imposed on it by *Gates*. It is not completely clear from the relevant precedents, yet, just how detailed the description of photographs allegedly constituting a "lascivious exhibition" has to be, and how much impact must be attributed to this description, as opposed to all other factors and accounts which might comprise the totality of the circumstances present in a particular case. This case, hence, was, at the very least, a close call.

Therefore, having determined that the officers in this case acted with a good faith reasonable belief that the warrant was not defective, we understand that the exclusion of the fruits of the search would not serve a deterrent purpose. This is exactly the situation that was present in *Brunette*. In that case, too, the court refused to exclude the child pornography evidence based on the *Leon* exception. The same thing was done by the Second Circuit Court of Appeals in another child pornography case. *See United States v. Jasorka*, 153 F.3d 58, 60–61 (2nd Cir.1998) ("We find no basis for concluding that the customs agent acted otherwise than reasonably and in good

faith in relying on the authority of the warrants issued by the magistrate judge"). We would follow the same approach in this case.

## VII. Time Limit of the Search

 Lastly, Defendant argues that some of the photographs retrieved from his computer were so obtained after the time period which the warrant specified for the search. The search warrant in this case was obtained on July 30, 2001, and it ordered that the search be conducted on or before August 8, 2001. That deadline included the search of the computer, the hard drive and the computer disks obtained as a result of the warrant. The search of Defendant's computer and its hard drive was made by the FBI computer examiner on July 31, 2001. On the other hand, the examination of the computer disks obtained, which are identified as 26 floppy diskettes, was made on September 13, 2001.

The images that were found on Defendant's computer hard drive were obtained during the examination made on the day of the search, July 31, 2001. These images were copied to a CD–ROM that same day and were the ones shown to counsel on the day of the preliminary hearing and on the day of the de novo bail hearing. These images are the ones that Defendant was found in possession of and for which he was charged in the indictment pending against him. They were, in fact, recovered before the warrant expired on August 8, 2001. Therefore, this search was done within the time limit set by the search warrant, and the evidence should not be suppressed.

As to the images and any other material obtained from the 26 floppy diskettes which were searched on September 13, 2001, it is apparent that these items were retrieved after the August 8, 2001, deadline ordered by the magistrate. The Government does not contest the fact that these items were accessed after the date indicated on the warrant. These diskettes, however, were seized pursuant to a valid search warrant and before the time limit imposed by the magistrate. Defendant cites *Brunette,* 76 F.Supp.2d 30, in support of the suppression of evidence gathered outside the time frame set in the warrant. Based on the above stated set of facts, however, Defendant's argument fails. Neither Fed.R.Crim.P. 41 nor the Fourth Amendment provides for a specific time limit in which a computer may undergo a government forensic examination after it has been seized pursuant to a search warrant. In most cases the forensic examination of the computer will take place at a different location than that where the computer was seized. The same principle applies when a search warrant is performed for documents. The documents are seized within the time frame established in the warrant but examination of these documents may take a longer time, and extensions or additional warrants are not required. The examination of these items at a later date does not make the evidence suppressible. *Commonwealth v. Ellis,* 10 Mass. L. Rptr. 429, 1999 WL 815818 (Mass.Super.1999).

In cases where the warrant directs agents to seize broad categories of records, or even all records, courts have upheld the "carting off" of whole file cabinets containing pounds of unsorted paper, to be searched off-site. *U.S. Postal Service v. C.E.C. Services,* 869 F.2d 184, 187 (2nd Cir.1989); *United States v. Sawyer,* 799 F.2d 1494, 1508 (11th Cir.1986), *cert. denied sub nom., Leavitt v. United States,* 479 U.S. 1069, 107 S.Ct. 961, 93 L.Ed.2d 1009 (1987). The rationale that searches can be executed off-site because of the volume of information has been extended to in-

clude computers. *United States v. Snow,* 919 F.2d 1458, 1461 (10th Cir. 1990); *United States v. Henson,* 848 F.2d 1374 (6th Cir.1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989). These and other cases express the proposition that, because off-site computer searches are reasonable, it may be necessary, by implication, for the return of the warrant to be filed with the court before such off-site searching can be completed. Courts have recognized that the search of computer data involves more preparation than an ordinary search and a greater degree of care in the execution of the warrant; and that the search may involve much more information.

*Id.* 1999 WL 815818 at *9. In the case before us, the search of Defendant's home itself took place within the time designated in the warrant. We find that it was perfectly reasonable for the Government to take a longer time to search and inspect the images in the floppy disks, particularly after already having discovered child pornography in Defendant's hard disk. Therefore, the evidence recovered will not be suppressed.

## Conclusion

Although we agree with Defendant that, under the prevailing jurisprudence in the First Circuit, the description of the photographs contained in the affidavit was not specific enough to allow the magistrate to reach the conclusion that there was probable cause that those particular pictures constituted child pornography, we nonetheless find that **the totality of the circumstances described in said affidavit** were enough to support a finding of probable cause that a search of Defendant's house would result in the recovery of child pornography. Furthermore, we understand that the good-faith exception to the exclusionary rule created in *United States*

*v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) would apply in this case, if it were to be determined that the warrant was issued without probable cause. Lastly, we do not think that the Government's failure to examine the images in the floppy diskettes strictly within the time frame specified in the warrant was unreasonable. Therefore, Defendant's motion to suppress is **DENIED.**

**SO ORDERED.**